No. 2--06--0104          Filed:  6-29-07

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05--DT--1945 |
| | ) ) | Honorable |
| RODNEY C. WALTER, | ) ) | Nicholas J. Galasso and Kenneth W. Torluemke, |
| Defendant-Appellee. | ) | Judges, Presiding. |

---

JUSTICE O'MALLEY delivered the opinion of the Court:

The State appeals from an order of the circuit court of Du Page County granting defendant, Rodney C. Walter's amended motion to quash his arrest for driving under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(1), (a)(2) (West 2004)) and to suppress evidence.  We reverse and remand.

Defendant was arrested on the evening of April 30, 2005, by Bloomingdale police officer Gary Fuchs.  Subsequent to the arrest, Officer Fuchs executed a sworn report indicating that defendant had submitted to testing of the alcohol content of his blood, that the testing revealed a blood alcohol concentration of 0.175, and that defendant had been given notice of the statutory summary suspension of his driving privileges, pursuant to section 11--501.1 of the Illinois Vehicle Code (625 ILCS 5/11--501.1 (West 2004)).

Defendant apparently filed a petition to rescind the statutory summary suspension. Although the petition itself does not appear in the record, a hearing on the petition was held before Judge Nicholas J. Galasso on May 31, 2005. At the hearing, Officer Fuchs testified that at about 9 p.m. on April 30, 2005, he responded to a report of a motor vehicle accident near the intersection of Schick Road and Gary Avenue. When Officer Fuchs arrived at the scene, he spoke with the driver of one of the vehicles involved in the accident, who is referred to in the record as Mr. Joy. Mr. Joy advised Officer Fuchs that the other driver had pulled his vehicle into the parking lot of a nearby fast-food restaurant. Officer Fuchs proceeded to the restaurant. When he arrived, Officer Fuchs observed defendant leaving the restaurant. Officer Fuchs testified that he asked defendant whether he had been involved in a traffic accident. Defendant responded that he had. Officer Fuchs did not specifically ask whether defendant had been driving the vehicle involved in the accident. Officer Fuchs testified that defendant's eyes were bloodshot and that he had a strong odor of alcohol on his breath. During their conversation, defendant told Officer Fuchs that he had come from an establishment called Fox and Hounds that serves food and liquor. Officer Fuchs asked defendant whether he had consumed any alcohol, and defendant responded that he had had four glasses of beer. Officer Fuchs then administered several field sobriety tests to defendant. Based on defendant's performance on the tests, Officer Fuchs believed defendant was under the influence of alcohol. Officer Fuchs also administered a portable breath test, which registered an alcohol concentration of 0.167. Judge Galasso granted defendant's petition, reasoning that the State had failed to prove that defendant had been driving.

Defendant later filed a motion to quash his arrest and suppress evidence. A hearing on that motion was held before a different judge, the Honorable Kenneth W. Torluemke. A transcript of Officer Fuchs's testimony at the rescission hearing was admitted into evidence at the hearing on the

motion to quash and suppress. In addition, Bloomingdale police officer Jim Janes testified that he was dispatched to assist Officer Fuchs at the scene. When he arrived, he saw Officer Fuchs administering field sobriety tests to defendant. Officer Janes spoke briefly with Officer Fuchs, and it was agreed that Officer Janes would speak with Mr. Joy. Officer Janes proceeded to interview Mr. Joy. During the interview, Mr. Joy pointed out defendant as the driver of the other vehicle involved in the accident. However, Officer Janes testified that he conveyed this information to Officer Fuchs only after they had both returned to the police station.

Judge Torluemke denied the motion to quash and suppress, but defendant filed an amended motion to quash and suppress, which was heard by Judge Galasso. No new evidence was presented in support of the amended motion. Based on the transcripts of testimony at the rescission hearing and the hearing on defendant's original motion to quash and suppress, Judge Galasso granted defendant's motion. This appeal followed.

On a motion to quash an arrest and suppress evidence, it is the defendant's burden to present a prima facie case that the police lacked probable cause to arrest. People v. Brexton, 343 Ill. App. 3d 322, 326 (2003). Once the defendant has done so, "the State has the burden of going forward with evidence to counter the defendant's prima facie case." People v. Gipson, 203 Ill. 2d 298, 307 (2003). Review of a ruling on a motion to quash an arrest and suppress evidence can present a question of law, questions of fact, or both. People v. Lee, 214 Ill. 2d 476, 483 (2005). A reviewing court must accord great deference to the trial court's factual findings and should reverse them only if they are against the manifest weight of the evidence. People v. Sorenson, 196 Ill. 2d 425, 431 (2001). However, a reviewing court will review de novo the ultimate question of whether a motion

to quash and suppress should be granted on a given set of facts. People v. Luedemann, 222 Ill. 2d 530, 542-43 (2006).

Defendant insists that the trial court's ruling that Officer Fuchs had no reasonable, articulable suspicion to detain him was based upon the trial court's findings as to credibility. Defendant argues that those findings were not against the manifest weight of the evidence. The facts are not really in dispute, however. The testimony presented was essentially uncontradicted, and the parties appear to be largely in agreement as to the historical facts. The real issue before us is whether, under the fourth amendment, those facts mandate that defendant's arrest be quashed and that the evidence be suppressed. We examine that issue de novo.

The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The search and seizure provision of the Illinois Constitution is interpreted in "limited lockstep" with the fourth amendment. People v. Caballes, 221 Ill. 2d 282, 288-317 (2006) (reaffirming "limited lockstep" doctrine). As our supreme court has noted, "[c]ourts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or 'Terry stops,' ***; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." Luedemann, 222 Ill. 2d at 544. Here, it is the second type of encounter--a Terry stop--that is at issue.

Terry stops take their name from the United States Supreme Court's decision in Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), which held that the public interest in effective law enforcement makes it reasonable in some situations for law enforcement officers to temporarily detain and question individuals, notwithstanding the absence of probable cause for an arrest. Under

Terry, a limited investigatory stop is permissible where there exists a reasonable suspicion, based upon specific and articulable facts, that the person has committed or is about to commit a crime. Terry, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. In his amended motion to quash and suppress, defendant claimed that Officer Fuchs improperly detained him without a reasonable, articulable suspicion of criminal activity and that the fourth amendment requires that "all evidence obtained subsequent to the detention of [defendant] should be suppressed and his arrest should be quashed."

Whether a Terry stop is supported by a reasonable suspicion depends on the facts known to the officer at the time of the stop. People v. DiPace, 354 Ill. App. 3d 104, 108 (2004). To determine what facts were known to the officer at the time of the Terry stop, it is obviously necessary to determine when the Terry stop occurred. As noted, consensual encounters between police and citizens do not implicate the fourth amendment. For fourth amendment purposes, a person is seized when an officer, " 'by means of physical force or show of authority,' " restrains a citizen's liberty. Florida v. Bostick, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991), quoting Terry, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16 (1968). In determining whether a seizure has occurred, a court considers whether, " 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " People v. Brownlee, 186 Ill. 2d 501, 517 (1999), quoting United States v. Mendenhall, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). "Mendenhall lists four examples of circumstances that may be indicative of a seizure: (1) the threatening presence of several police officers, (2) the display of a weapon by an officer, (3) some physical touching of the individual involved in the encounter, and (4) the use of language or tone of voice indicating that compliance

with the officer's request might be compelled." People v. Smith, 214 Ill. 2d 338, 353 (2005), citing Mendenhall, 446 U.S. at 554-55, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. "Absent some such evidence, 'otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.' " Smith, 214 Ill. 2d at 353, quoting Mendenhall, 446 U.S. at 555, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877. "It is well settled that a seizure does not occur simply because a law enforcement officer approaches an individual and puts questions to that person if he or she is willing to listen." People v. Gherna, 203 Ill. 2d 165, 178 (2003).

There is no evidence that when Officer Fuchs first approached defendant outside the fast-food restaurant he used any physical force or show of authority to detain defendant, and, as stated, a police officer's approaching an individual and asking him questions does not automatically cause a seizure. However, after asking defendant a few preliminary questions, Officer Fuchs administered field sobriety tests to defendant. This raises the question of whether defendant's submission to Fuchs's request converted the encounter into a seizure under the fourth amendment.[1]

The parties direct us to no Illinois case law on this point. Our survey of authority from other jurisdictions, however, indicates that courts in many circumstances consider such submissions to amount to seizures.

---

[1] We frame the issue as whether a seizure occurred when defendant submitted to the tests, as opposed to when Officer Fuchs requested that he submit, because a seizure requires either physical force, restraint of movement, or the defendant's submission to an officer's assertion of authority. People v. Morris, 209 Ill. 2d 137, 155 (2004) (stating the rule in terms of arrest but noting that the Supreme Court held that a defendant had not been seized under the rule), citing California v. Hodari D., 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991).

For example, in State v. Little, 468 A.2d 615, 616 (Me. 1983), an officer activated his emergency lights and pulled his police car behind a vehicle he had seen weaving and travelling slowly, and, upon smelling alcohol on the driver-defendant, the officer "led the Defendant to the [police] cruiser and asked him to perform certain 'field sobriety' tests." The court held that "[e]ven though the administration of the field sobriety tests was part of an investigatory stop rather than an arrest, it nonetheless qualifies as a 'seizure,' which must be 'reasonable.' " Little, 468 A.2d at 617.

In State v. Wyatt, 67 Haw. 293, 297, 687 P.2d 544, 548 (1984), an officer who directed a car to pull over smelled alcohol coming from the car, and, when the driver admitted that she had been drinking, the officer "ordered her to alight from the car and proceeded to administer a field sobriety test." The court held that the traffic stop was valid but noted that the defendant "was later ordered to step out of her automobile and subjected to a [field sobriety] test." Wyatt, 67 Haw. at 304, 687 P.2d at 552. The court held that "[t]he validity of this 'seizure' and test for sobriety turns on whether there was cause for further detention and the manner in which the quest for evidence of drunkenness was carried out." Wyatt, 67 Haw. at 304, 687 P.2d at 552.

In Harrod v. State, No. 05--06--00787--CR, slip op. at ___ (Tex. App. January 23, 2007), the court held that, after an officer stopped a vehicle, found indicia that the driver had been drinking, and "asked" the driver to perform field sobriety tests, the officer "had reasonable suspicion to further detain [the defendant] in order to administer field sobriety tests. The *** tests were the least intrusive means by which [the officer] could verify or dispel his suspicion that [the defendant] may have been driving while intoxicated." (Elsewhere in the opinion, the court states that the officer "asked" the defendant to step out of his car but "told" the defendant "he was going to perform field sobriety tests." Harrod, slip op. at ___.) Likewise, in Commonwealth v. McGrail, 419 Mass. 774, 779 n.9,

647 N.E.2d 712, 715 n.9 (1995), where an officer stopped a car and asked the driver to perform sobriety tests (which the driver refused), the court stated in a footnote that "police officers are permitted to make limited inquiries as part of a Terry-type stop. Thus, the courts in both cases assumed that field sobriety testing amounted to seizures that required fourth amendment justification.

Other cases have held that submissions to field sobriety tests amounted to searches under the fourth amendment. In People v. Carlson, 677 P.2d 310, 313 (Colo. 1984), an officer stopped a car, "told the defendant to step out of the car and walk to the rear of the vehicle," and "told him that he would like him 'to do some roadside tests [but that] he didn't have to if he didn't want to.' " The Colorado Supreme Court held that "[r]oadside sobriety testing constitutes a full 'search' in the constitutional sense of that term and therefore must be supported by probable cause." Carlson, 677 P.2d at 317. However, the court remanded the case for a determination of whether the driver consented to the search. Carlson, 677 P.2d at 318. In State v. Superior Court, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986), an officer stopped a driver and "had [him] perform a battery of six field sobriety tests." The Arizona Supreme Court cited the Colorado Supreme Court decision in Carlson and held that sobriety testing constituted a search under the fourth amendment and must be justified by reasonable suspicion. Superior Court, 249 Ariz. at 274, 718 P.2d at 176. In State v. Nagel, 320 Or. 24, 26, 880 P.2d 451, 453 (1994), an officer stopped a car and, after noticing evidence that the driver was intoxicated, asked that the driver perform field sobriety tests. The officer advised the driver that the officer was requesting that he perform the tests and informed him of the consequences under Oregon law of his refusal. Nagel, 320 Or. at 26, 880 P.2d at 453, citing Or. Rev. Stat. Ann. §813.136 (West 2005) (if a person does not submit to field sobriety testing as required under Oregon

law, evidence of the refusal is admissible against the driver).[2] The court in Nagel concluded that administration of the tests constituted a search under the fourth amendment. Nagel, 320 Or. at 31, 880 P.2d at 455; see also S. Andre, State v. Nagel: Oregon Supreme Court Plots a New Course for State's DUII Law by Ruling Field Sobriety Tests Constitute a Search, 74 Or. L. Rev. 697 (1995).

Still other cases consider whether administration of field sobriety tests requires probable cause as incident to an arrest or simply requires reasonable suspicion as incident to a traffic stop. See State v. Stevens, 394 N.W.2d 388, 391-92 (Iowa 1986) (collecting cases); see also Superior Court, 149 Ariz. at 274, 718 P.2d at 176 (holding that reasonable suspicion, not probable cause, is required). These cases, then, implicitly follow the first set of cases holding that testing amounts to a seizure.

On this point, we note that, in Illinois, whether a defendant has submitted to field sobriety testing is a factor in determining whether he or she was arrested. See. e.g., People v. Fortney, 297 Ill. App. 3d 79, 86 (1998) ("factors to consider when determining if and when a suspect has been arrested for driving under the influence are (1) the issuance of a citation; (2) the administration of field sobriety tests; (3) the transportation to a police station [citation]; (4) the police officer's continuing possession of an individual's driver's license; (5) the handcuffing of the individual or the

---

[2]We note that, under Illinois law, a driver is not required to submit to field sobriety testing. Compare Or. Rev. Stat. Ann. §813.135 (West 2005) ("Any person who operates a vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests ***") with 625 ILCS 5/11--501.1(a) (West 2004) ("Any person who drives *** a motor vehicle *** shall be deemed to have given consent *** to a chemical test or test of blood, breath, or urine for the purpose of determining the content of alcohol *** in the person's blood").

placing of the individual in the squad car [citation]; and (6) the duration of the individual's detention [citation]"). Thus, in Illinois, submission to a field sobriety test does not per se amount to an arrest, and such testing may be justified by reasonable suspicion rather than probable cause. However, Fortney and cases like it do not shed light on the question of whether the testing amounts to a seizure in the first place.

In all of the above cases, the defendant had already been stopped when he or she submitted to sobriety testing, and the cases therefore consider whether the testing violated the fourth amendment in light of the fact that the defendant had already been seized. Here, on the other hand, defendant was not stopped at any point prior to his submission to testing. Though, again, the parties direct us to no cases on point, our research reveals three cases from other states in which courts held that the defendants were seized only upon submission to testing.

In State v. Gray, 150 Vt. 184, 185, 552 A.2d 1190, 1191 (1988), an officer approached two men, the defendant and a companion, and "asked them to return to their vehicle" after seeing them drive erratically, park, exit the vehicle, and throw what appeared to be an empty beer bottle in the back of the vehicle. When one of the two men dropped the keys to the vehicle, the officer picked them up and kept them in his possession, and, during this time, the defendant told the officer that he had been drinking. Gray, 150 Vt. at 186, 552 A.2d at 1191. "Following this exchange, the officer asked [the] defendant to perform several [field sobriety] tests." Gray, 150 Vt. at 186, 552 A.2d at 1191. The court inexplicably held that the defendant was not seized at any point before the field sobriety testing, including when the officer kept the keys to the vehicle, but it held that the defendant "was seized, however, within the meaning of the Fourth Amendment when the officer requested that [the] defendant perform field [sobriety] tests." Gray, 150 Vt. at 190, 552 A.2d at 1194. In a

footnote, the court added that "there appears to be no disagreement among the jurisdictions that requiring a defendant to perform field [sobriety] tests constitutes a seizure within the meaning of the Fourth Amendment." Gray, 150 Vt. at 190 n.5, 552 A.2d at 1194 n.5.

In State v. Augustine, 851 N.E.2d 1022, 1024-25 (Ind. App. 2006), an officer responding to a tip walked up to the defendant's car, which was already stopped in the defendant's driveway, and the defendant rolled down the driver's-side window to speak with the officer. After noting indicia of the defendant's intoxication, the officer "conducted field sobriety tests." Augustine, 851 N.E.2d at 1025. The court held that "[t]he consensual encounter evolved into an investigatory stop when the officer asked [the defendant] to exit the vehicle to submit to field sobriety tests." Augustine, 851 N.E.2d at 1026.

Finally, in State v. Day, 237 Ga. App. 771, 771, 516 S.E.2d 822, 823 (1999), an officer acting on a tip approached the defendant, who had just exited his vehicle, and asked for his license and proof of insurance. After noting signs that the defendant was drunk, the officer "conducted a series of field sobriety tests." Day, 237 Ga. App. at 771, 516 S.E.2d at 823. The court held that "[w]hen the officer asked [the defendant] to perform the field sobriety checks, the encounter became a Terry stop." Day, 237 Ga. App. at 772, 516 S.E.2d at 823.

From the above, it appears that there is ample authority to support a holding that submission to a field sobriety test converts an encounter into a seizure (or search) under the fourth amendment. However, as noted at the outset of this discussion, whether a seizure has occurred in a given case depends on whether, given all of the circumstances surrounding the incident, a reasonable person in the defendant's place would have believed that he was not free to leave. Brownlee, 186 Ill. 2d at 517, quoting Mendenhall, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. Among the factors

a court should consider in determining whether a seizure occurred is "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Smith, 214 Ill. 2d at 353, citing Mendenhall, 446 U.S. at 554-55, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. The distinction between a request that may reasonably be perceived to require compliance and a request that may not is crucial, as it relates to the coerciveness of a police encounter. See, e.g., People v. Murray, 137 Ill. 2d 382, 393 (1990) ("The encounter may be characterized as a seizure if the officer orders, rather than requests, that the occupant open the door or exit the car"); see also Bostick, 501 U.S. at 434-35, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386 ("We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [citations]; ask to examine the individual's identification [citations]; and request consent to search his or her luggage [citation]--as long as the police do not convey a message that compliance with their requests is required"); cf. 4 W. LaFave, Search & Seizure §9.4(a) , at 433 (4th ed. 2004) ("A request that the suspect open the door or roll down the window would seem *** permissible, but the same would not be true of an order that he do so").

In the above cases in which the courts characterized the officers as "asking" or "requesting" that the defendants submit to field sobriety tests, the courts placed so little emphasis on the manner of the requests or orders that the question likely remains open whether the uses of the word "ask" or "request" were significant. Likewise the cases that indicate the police "told" the defendants to take the test, that indicate the police "conducted" the test, or that indicate nothing of the nature of the officers' statements preceding the testing. In fact, only two of the cases discussed above, Carlson and Nagel, clearly indicate the nature of the officers' requests. In Nagel, unlike this case, the driver was required by law to submit to the field sobriety test; thus, the "request" was much more imposing than

is necessarily the case here. In Carlson, the court noted that there was an issue as to consent and remanded the cause for further factual findings. (Likely because it analyzed the case as a search instead of a seizure, the court did not discuss the distinction between a request and an order in terms of its effect on the initial question of whether anything beyond a consensual encounter occurred.)

In this case, the totality of the circumstances surrounding the field sobriety tests includes one aspect that may not have been present in the above cases and, in any event, was not considered at length in those cases: here, the facts indicate that Officer Fuchs requested that defendant submit to field sobriety tests; he did not order defendant to submit.[3] There is no indication that Officer Fuchs's tone of voice, or any other quality of his request, indicated to defendant that compliance with his request was compelled, and defendant makes no such argument.

A request to submit to a field sobriety test, without more, is still a request, and whether submission to the particular request at issue amounts to a seizure may very well depend on the many possible circumstances surrounding the request as well as the nature of the request itself. As such, despite the above case law from foreign jurisdictions, we are not prepared to say ourselves that

[3]A driver in Illinois is not required to submit to an officer's request or order for field sobriety testing, but the question here is not whether police can compel a defendant to undergo the tests, but whether the nature of police conduct would make a reasonable driver feel that he was seized. Though the distinction between a police order and a police request has no bearing on whether a driver must submit to testing, and even though a police officer has no authority to order such testing, whether the test is ordered or requested bears on the level of police authority asserted during the encounter and thus on a reasonable defendant's perception of whether he is free to leave, based on the totality of the circumstances.

submission to an officer's request to submit to a field sobriety test per se converts an encounter into a fourth amendment seizure or search. Nor are we prepared to say that submission to a request, rather than to an order, to take a field sobriety test cannot constitute consent to the possible search the test might entail. See People v. Devine, 98 Ill. App. 3d 914, 922 (1981) ("A voluntary consent to an otherwise unreasonable search and seizure waives the constitutional privilege and the evidence derived therefrom is admissible at trial"). In fact, here, we need not even reach the question of whether the totality of the circumstances presented in this case, including Officer Fuchs's request that defendant submit to field sobriety tests and defendant's compliance, converted the encounter into a seizure (or a search without consent), because, even assuming for purposes of this analysis that a seizure occurred at the point defendant submitted to the tests (or that this was a search and defendant's submission did not constitute consent), we hold that the testing was justified under the fourth amendment.

Before discussing whether any seizure here was valid under the fourth amendment, we must determine whether the administration of the field sobriety tests here required probable cause or merely reasonable suspicion. As noted above, though there is some dispute among authority from other states regarding whether a seizure in the form of submission to a field sobriety test must be justified by probable cause or merely by reasonable suspicion, we conclude that Illinois law requires only reasonable suspicion unless the circumstances otherwise show that an arrest took place. Cf. Fortney, 297 Ill. App. 3d at 86 (administration of field sobriety tests is one of several factors to use to determine if an arrest has taken place). Here, there is no reason to conclude that, through the time defendant submitted to sobriety testing, Officer Fuchs's encounter with him constituted an arrest rather than a stop (or no seizure at all). Aside from the administration of the field sobriety tests, none

of the factors identified in Fortney are present here. Again, those factors are as follows: "(1) the issuance of a citation; (2) the administration of field sobriety tests; (3) the transportation to a police station [citation]; (4) the police officer's continuing possession of an individual's driver's license; (5) the handcuffing of the individual or the placing of the individual in the squad car [citation]; and (6) the duration of the individual's detention [citation]." Fortney, 297 Ill. App. 3d at 86. At the time defendant submitted to sobriety testing, he had not been issued a citation, and he had not been transported to the police station, handcuffed or placed in a squad car, or even detained in any way. Also, Officer Fuchs had not even asked for, much less retained, his driver's license. Further, defendant does not argue that he was under arrest at the time he submitted to the testing. Accordingly, we proceed under a Terry analysis. Under that analysis, we conclude that, when Officer Fuchs administered the field sobriety tests to defendant, there existed a reasonable suspicion, based on specific and articulable facts, that defendant had committed DUI, and thus the testing, even if a seizure, was justified under Terry.

As pertinent here, a person commits DUI when he or she drives or is in actual physical control of a motor vehicle while under the influence of alcohol or while the alcohol concentration of the person's breath or blood is 0.08 or more. 625 ILCS 5/11--501(a)(1), (a)(2) (West 2004). There appears to be no dispute that the facts known to police were sufficient to create a reasonable suspicion that defendant was under the influence of alcohol. Before administering the field sobriety tests, Officer Fuchs had observed that defendant's eyes were bloodshot and that he had a strong odor of alcohol on his breath. Also, defendant had admitted drinking four glasses of beer. The real point of contention is whether the police had a basis to believe that defendant had been driving or in actual physical control of a motor vehicle.

Defendant argues that, although he told Officer Fuchs that he had been involved in an accident, he never stated that he was driving. Defendant also argues that the other driver, Mr. Joy, did not identify defendant to Officer Fuchs. Defendant points out that while Mr. Joy may have identified defendant to Officer Janes, Officer Janes did not share that information with Officer Fuchs until after defendant was arrested.

What Officer Janes knew has no bearing on the issue of reasonable suspicion at the time the field sobriety tests were administered, because defendant submitted to the testing before Officer Janes became involved in the investigation. Nonetheless, defendant's argument is unpersuasive.

The test for reasonable suspicion is less exacting than that for probable cause (People v. Culbertson, 305 Ill. App. 3d 1015, 1024 (1999)), and even probable cause does not demand a showing that the belief that a suspect has committed a crime be more likely true than false (People v. Jones, 215 Ill. 2d 261, 277 (2005), quoting Texas v. Brown, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535, 1543 (1983)). Thus, while reasonable suspicion demands more than a mere hunch (People v. Thomas, 198 Ill. 2d 103, 110 (2001)), the standard requires only that "a police officer must be able to point to specific, articulable facts which, when taken together with the rational inferences from those facts, reasonably warrant the intrusion." People v. Schacht, 233 Ill. App. 3d 271, 275 (1992), citing Terry, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. For purposes of determining the existence of reasonable suspicion, "[t]he facts should not be viewed with analytical hindsight, but instead should be considered from the perspective of a reasonable officer at the time that the situation confronted him or her." Thomas, 198 Ill. 2d at 110.

Given the standard for reasonable suspicion, we cannot escape the conclusion that the facts known to Officer Fuchs were sufficient to give rise to reasonable suspicion that defendant had been

driving a motor vehicle, even if those facts left open the possibility that defendant was not the driver. Officer Fuchs was aware that Mr. Joy had been involved in a motor vehicle accident with an unidentified driver who had driven into the parking lot of a fast-food restaurant. Officer Fuchs encountered defendant coming out of the restaurant. Defendant admitted that he had been involved in an accident. Although defendant did not specifically admit that he was the driver of the vehicle involved in the accident, it was reasonable, based on all the circumstances, to suspect that he was.

Defendant's amended motion to quash and suppress focused on the existence of reasonable suspicion to detain him as of the time he submitted to the field sobriety testing. He did not specifically argue that the facts known to the police when defendant was actually placed under arrest were insufficient to establish probable cause for that arrest. The requirement of probable cause is satisfied when, at the time of an arrest, the facts known are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. People v. Love, 199 Ill. 2d 269, 279 (2002). "The standard for determining whether probable cause [to arrest] is present is probability of criminal activity, rather than proof beyond a reasonable doubt." Lee, 214 Ill. 2d at 485. Again, probable cause does not demand a showing that the belief that a suspect has committed a crime be more likely true than false. Jones, 215 Ill. 2d at 277, quoting Brown, 460 U.S. at 742, 75 L. Ed. 2d at 514, 103 S. Ct. at 1543.

The police in this case had probable cause to believe at the time of defendant's arrest that defendant had committed a crime. By the time defendant had been arrested, Mr. Joy had advised Officer Janes that defendant was the other driver involved in the accident. Although Officer Janes evidently did not share this information with Officer Fuchs until after the arrest, it has been stated that " '[w]hen police officers are working in concert in investigating a crime or possible crime, probable

cause may be established from their collective knowledge, even if it is not within the personal knowledge of the arresting officer.' " People v. Dizon, 297 Ill. App. 3d 880, 885 (1998), quoting People v. Hendricks, 253 Ill. App. 3d 79, 89 (1993); see generally 2 W. LaFave, Search & Seizure §3.5(c), at 289-90 n.81 (4th ed. 2004) (collecting cases). Application of this principle is appropriate here. The record shows that Officer Janes was dispatched to assist Officer Fuchs and that he even spoke with Officer Fuchs to divide responsibility for their investigation. Thus, there can be little question that Officers Fuchs and Janes were working in concert in investigating a crime. From speaking with Mr. Joy, Officer Janes was aware that defendant was the driver of one of the vehicles involved in the accident. Officer Janes's knowledge of Mr. Joy's identification of defendant as the driver, combined with Officer Fuchs's knowledge of evidence of defendant's intoxication, was sufficient to establish probable cause that defendant had been driving under the influence of alcohol. This remains true even if one investigating officer was aware that defendant was driving and another investigating officer was aware that defendant was intoxicated, and it remains true regardless of whether the officers ever shared their respective information.

For the foregoing reasons, we conclude that defendant's fourth amendment rights were not violated. We therefore reverse the trial court's order granting defendant's amended motion to quash and suppress, and we remand for further proceedings.

Reversed and remanded.

GROMETER, P.J., and CALLUM, J., concur.