# Illinois Official Reports

## Appellate Court

---

### *People v. Bianca*, 2017 IL App (2d) 160608

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KATHLEEN BIANCA, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0608 |
| Filed | September 28, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 14-DT-655; the Hon. Robert J. Morrow, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Lawrence M. Bauer, and Ivan O. Taylor, Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Michael J. Pelletier, Thomas A. Lilien, and Yasemin Eken, of State Appellate Defender's Office, of Elgin, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Birkett and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Kathleen Bianca, was charged with two counts of driving under the influence (DUI) (625 ILCS 5/11-501(a)(1), (2) (West 2012)). Defendant filed a motion to suppress evidence, claiming that she was unlawfully seized by the police officer. The trial court granted defendant's motion, and the State appeals. We affirm.

¶ 2                                                    I. FACTS

¶ 3    On June 26, 2014, police officer Gary LaBarbera arrested defendant for DUI, following a field sobriety test. Defendant filed a motion to suppress, arguing that LaBarbera unlawfully seized her.

¶ 4    At the hearing, the following testimony was elicited. LaBarbera testified that he was performing a traffic stop when a citizen drove by and reported seeing a car driving "recklessly and all over the road" and that she had seen the vehicle park behind K&L Liquors. The citizen described the vehicle as a black SUV with a manufacturer's marking that looked like an "upside-down V." The citizen did not give LaBarbera a description of the license plate or the car's exact make or model and could not describe anything about the driver other than that she was a white female with blonde hair. The citizen did not elaborate on what she meant by "driving recklessly and all over the road," and she did not explain how long the driver had done so. The citizen then drove off, and LaBarbera did not ask her to wait so he could obtain more information.

¶ 5    LaBarbera relocated his traffic stop to the liquor store, where he observed a car matching the description given to him by the informant and then saw defendant leave the store and enter the car. LaBarbera left the traffic stop, parking his marked squad car next to defendant's car.

¶ 6    Defendant testified that LaBarbera parked his marked squad car behind her car, blocking her from leaving, and then got out of his car. He was in full uniform. He came up to her window to speak to her. LaBarbera testified that he could not recall "for sure," but he did not think he "even got out of [his] car." LaBarbera asked defendant to "stay in that spot" so he could speak with her after he "cleared" his other traffic stop. He testified that he did not "command" defendant to stay but rather "requested" her to do so. Defendant testified that the officer asked her to stay. Although the officer asked her to stay, defendant believed she was required to stay and would not have left. LaBarbera agreed that defendant "followed his instructions" and waited for him to return.

¶ 7    When LaBarbera returned to defendant's car, he asked for her driver's license and proof of insurance. Eventually, he had defendant step out of the car to perform field sobriety tests. Following the field sobriety tests, LaBarbera arrested defendant. He brought her to the station, where she submitted to a Breathalyzer. LaBarbera never observed defendant driving the vehicle, but he testified that defendant's arrest was not based solely on the anonymous tip he had received from the citizen.

¶ 8    The trial court granted defendant's motion to suppress. The court noted the conflicting testimony about whether the officer blocked defendant's exit by parking behind her car or next to it. However, the court stated that it was not "going to find a seizure here based on blockage because there was conflict of the testimony and the officer said he never blocked her vehicle." The court concluded that the case was "not a blockage case" but rather an "anonymous

informant case," relying on *Village of Mundelein v. Minx*, 352 Ill. App. 3d 216 (2004), in which this court concluded that the informant's tip was not sufficiently reliable to provide the officer with reasonable suspicion to justify the investigatory stop. *Id.* at 222.

¶ 9 The trial court later clarified that a seizure had occurred by stating: "I am finding that there is a stop, yes." Later, at the hearing on the State's motion to reconsider, the trial court further stated that, when defendant stayed after LaBarbera told defendant not to leave and that he was working on another case, "[s]he stayed. I think she stayed because a uniformed officer in a squad car told her not to leave." The trial court found that a seizure occurred at that point, as a reasonable person in defendant's situation would not have felt free to leave. The trial court further found that the seizure had occurred without any reasonable suspicion that defendant had committed an offense, *i.e.*, the informant's tip was not sufficiently reliable to provide LaBarbera with reasonable suspicion for the investigatory stop. The State timely appeals, arguing that the trial court erred in granting defendant's motion to suppress evidence.

¶ 10                                   II. ANALYSIS
¶ 11                                   A. Seizure
¶ 12 In reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Gherna*, 203 Ill. 2d 165, 175 (2003). We must give great deference to the trial court's factual findings and will reverse only if the findings are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). A trial court's factual finding is against the manifest weight of the evidence only if it is unreasonable, arbitrary, or not based on the evidence presented, or if the opposite conclusion is clearly evident. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). However, the trial court's ultimate legal conclusion as to whether suppression is warranted is subject to *de novo* review. *Gherna*, 203 Ill. 2d at 175.

¶ 13 The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. However, not every interaction between citizens and police officers results in a seizure. *People v. McDonough*, 239 Ill. 2d 260, 268 (2010). There are three tiers of police-citizen encounters: (1) an arrest of a citizen, which must be supported by probable cause; (2) a temporary investigatory seizure conducted pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), where an officer may conduct a brief, investigatory stop of a citizen when the officer has a reasonable, articulable suspicion of criminal activity and such suspicion amounts to more than a mere "hunch"; and (3) police-citizen encounters that are consensual, which involve no coercion or detention and do not implicate any fourth amendment interests. *McDonough*, 239 Ill. 2d at 268.

¶ 14 The State has argued consistently both before the trial court and now on appeal that the evidence shows that the encounter between defendant and LaBarbera was consensual because the officer merely asked her to remain while he completed the unrelated traffic stop and she agreed to that request. The State has never argued that LaBarbera had a reasonable, articulable suspicion of criminal activity to perform a lawful *Terry* stop on defendant. Defendant asserts that she was illegally seized twice: the first when LaBarbera asked defendant to stay in her car and wait for him to return, and the second when LaBarbera requested defendant's driver's license and proof of insurance and told her to step out of the car and perform field sobriety tests.

¶ 15    The State is correct that the first encounter between defendant and LaBarbera was consensual. Both LaBarbera and defendant testified that LaBarbera asked defendant to stay. Therefore, the trial court's finding that the officer *commanded* defendant to stay is against the manifest weight of the evidence.

¶ 16    In the motion to suppress, defendant did not plead that she was illegally seized a second time when LaBarbera directed her to exit the vehicle and perform field sobriety tests. Section 114-12(b) of the Code of Criminal Procedure of 1963 requires that a motion to suppress "state acts showing wherein the search and seizure were unlawful." 725 ILCS 5/114-12(b) (West 2012). This rule serves a legitimate state interest. *People v. Johnson*, 38 Ill. 2d 399, 402 (1967). A motion to suppress places the trial court and the State on notice and frames the issue that must be decided in a pretrial hearing. But at the hearing on the motion, the defense presented evidence of the second encounter and argued that defendant was illegally detained during that time. The State never objected that it was beyond the scope of the motion and never requested to reopen the proofs to present evidence that LaBarbera had a reasonable, articulable suspicion to have defendant exit her car and perform field sobriety tests. By failing to argue this at trial, or on appeal, the State has forfeited this argument. See *People v. Hyland*, 2012 IL App (1st) 110966, ¶ 29. We are mindful that the trial court's ruling focused on the first encounter. However, as noted above, our review of the trial court's decision on a motion to suppress is *de novo*. *Gherna*, 203 Ill. 2d at 175. In conducting *de novo* review, an appellate court makes its own independent assessment of the issues and is free to substitute its own judgment for that of the trial court in order to formulate the legally correct answer. *People v. Coleman*, 183 Ill. 2d 366, 388 (1998). Using the *de novo* standard of review, we may affirm a trial court's decision on a motion to suppress on any basis established by the record. *People v. Keys*, 375 Ill. App. 3d 459, 461 (2007). Therefore, in this case, there is no impediment to our considering whether the evidence supports the conclusion that defendant was illegally seized during the second encounter.

¶ 17    As noted, consensual encounters between police and citizens do not implicate the fourth amendment. See *McDonough*, 239 Ill. 2d at 268. An individual is seized for fourth amendment purposes " 'only when, by means of physical force or a show of authority, his freedom of movement is restrained.' " *People v. Almond*, 2015 IL 113817, ¶ 57 (quoting *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)). Such restraint is analyzed under the totality of the circumstances and is considered a seizure when a reasonable person would believe he or she was not free to leave. *Id.* There are four *Mendenhall* factors that indicate a seizure: "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person; or (4) using language or tone of voice compelling the individual to comply with the officer's requests." *Id.*

¶ 18    According to the State, both defendant's and LaBarbera's testimonies show that, during their second interaction, LaBarbera was a single officer who did not display a weapon and did not touch defendant, and there was no mention of any compelling language or tone. The State argues that the absence of any *Mendenhall* factor demonstrates a lack of a seizure. The State believes that the trial court made an unfounded presumption of a seizure before directing its analysis toward reasonable suspicion.

¶ 19    While the State is correct that the absence of any *Mendenhall* factor is "highly instructive" as to whether a seizure occurred (*id.*), the factors are not exhaustive (see *Luedemann*, 222 Ill. 2d at 557). In *People v. Walter*, 374 Ill. App. 3d 763 (2007), we discussed how a defendant

acceding to an officer's request may be viewed as consensual. *Id.* at 766-73. However, there is ample authority to support a holding that submission to field sobriety testing is a seizure under the fourth amendment. See *Village of Lincolnshire v. Kelly*, 389 Ill. App. 3d 881, 886 (2009) (and cases cited therein). In this case, the evidence shows that defendant's acceding to the officer's direction was not consensual. Defendant testified that LaBarbera told her to exit the car and had her perform field sobriety tests. Also, LaBarbera admitted that, upon his return, he asked defendant for her driver's license and proof of insurance and he had her exit the car for field sobriety testing. There is no evidence to support an argument that defendant's performance of the tests was consensual.

¶ 20                                B. Reasonable, Articulable Suspicion

¶ 21    An officer may conduct a *Terry* stop if the officer has a reasonable, articulable suspicion that either the vehicle, or an occupant of the vehicle, is subject to seizure for violation of a law. *People v. Matous*, 381 Ill. App. 3d 918, 922 (2008). As the moving party in a suppression hearing, the defendant has the initial burden to prove that her seizure was unlawful, that is, that the police lacked a reasonable, articulable suspicion to temporarily detain her. *Id.* at 923. If the defendant makes a *prima facie* showing that she was doing nothing unusual to justify her seizure by the police, the burden of going forward then shifts to the State. *Id.*

¶ 22    After defendant testified, the trial court shifted the burden to the State, but the State does not argue on appeal that this was improper. As previously noted, the State also does not argue that LaBarbera had a reasonable, articulable suspicion to direct defendant to perform the field sobriety tests. At the point where defendant submitted to the direction to exit the car to perform field sobriety tests, there was a seizure unsupported by a reasonable, articulable suspicion. Therefore, the trial court did not err in granting the motion to suppress.

¶ 23                                        III. CONCLUSION

¶ 24    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 25    Affirmed.