**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230042-U

Order filed January 5, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0042 Circuit No. 22-DT-309 |
| | ) | |
| TIMOTHY J. LAYTON, | ) ) | Honorable Brian E. Barrett, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justice Peterson specially concurred.
Justice Hettel dissented.

_____

**ORDER**

¶ 1     *Held*:  The circuit court did not err in granting defendant's motion to quash arrest and suppress evidence. Affirmed.

¶ 2     The State appeals the circuit court's order granting the motion to quash arrest and suppress evidence filed by defendant, Timothy J. Layton. The State argues the court did not properly consider a number of factors in determining if defendant was under arrest. We affirm.

¶ 3                               I. BACKGROUND

¶ 4          Defendant was charged with driving while under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2022)). The charge stemmed from defendant's involvement in a single vehicle accident that occurred on Interstate 355. Defendant moved to quash his arrest and suppress evidence.

¶ 5          Illinois State Police Sergeant Lee, the sole witness at the hearing on the motion, testified he arrived at the scene of the accident and observed an immobile vehicle on the right side of the road. Lee could not recall the type of vehicle, whether its airbags had deployed, or whether the tollway had been damaged. According to Lee, defendant's speech was slurred, his eyes were glassy and bloodshot, and his breath smelled of alcohol. Lee could not recall if defendant admitted to consuming alcohol.

¶ 6          Defendant refused treatment from responding paramedics. Lee then placed defendant in the backseat of his squad car and transported him approximately one mile to an Illinois State Police squad room located inside a tollway plaza building. Lee explained he relocated defendant due to safety concerns related to conducting his investigation on the shoulder of the highway, where there was a risk of being struck by oncoming traffic. Lee testified that although defendant was not free to leave while inside the squad car, he was not under arrest and had not been handcuffed or advised of his *Miranda* rights.

¶ 7          Upon arriving at the tollway plaza, Lee parked in front of the squad room, "[p]ulled" defendant out of the car, and led him into the building. Once inside, defendant performed field sobriety tests. Defendant exhibited all six cues on the horizonal gaze nystagmus test and performed poorly on the other tests. Lee, however, could not recall any details of the tests. Lee testified defendant was not handcuffed or issued *Miranda* warnings while in the squad room prior to the

2

completion of the field sobriety tests. Defendant was placed under arrest after the field sobriety tests were completed.

¶ 8    In addition to Lee's testimony, the court also considered a video segment taken from the dash cam inside Lee's squad car. At the beginning of the video, Lee and defendant are not visible but can be heard speaking. Lee told defendant that he was going to take him to the plaza to avoid being hit by traffic. Defendant replied, "I appreciate it. Do it." The squad car arrived at the plaza approximately two minutes later. Upon arrival, defendant told Lee that he would have to call his lawyer. Lee asked defendant why, and defendant replied, "Because this is the weird, this is the weird part where everyone's like hey, what you doing up in here?" A few moments later, defendant can be seen walking between the squad car and the building toward the entrance to the squad room, led by Lee and followed by another trooper. Defendant stopped momentarily before entering the building and looked over at the second trooper as he held his hands up and placed his wrists together, appearing as though he anticipated being handcuffed. The trooper motioned for defendant to enter the building. The door closed behind them.

¶ 9    After the door closed, the dash cam continued recording the exterior of the squad room building. The interior of the squad room is not visible in the video but audio from inside the room can be heard, although some portions are unintelligible. As Lee questioned defendant about the crash, defendant stated Lee was "holding" him there. Lee replied he was not holding defendant. Lee told defendant he was investigating a crash involving tollway property damage and explained he brought defendant to the squad room to speak with him because they were out on the highway in cold weather. Lee told defendant he was going to administer field sobriety tests and proceeded to give defendant instructions on how to perform the tests.

¶ 10 In granting defendant's motion, the court concluded defendant was under arrest once he entered the squad room and the door of the only entrance to the building closed behind him. The court reasoned that because "[t]here [was] no easy access egress from [the] building" based on its location at the tollway plaza, defendant was not free to leave. The court found no probable cause to support an arrest at that point, stating "[t]here was no evidence as to anything other than a crash and some minor evidence, odor of alcohol, bloodshot, glassy eyes." As the arrest was deemed unlawful, the court suppressed any evidence obtained after the squad room door closed.

¶ 11 The court denied the State's motion to reconsider. In ruling on the motion, the court questioned Lee's testimony, noting the issue of Lee's inability to recall specific details of his encounter with defendant while simultaneously asserting that defendant was not detained. The State filed a certificate of substantial impairment, and this appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13 The State challenges the circuit court's determination that defendant was under arrest once he entered the squad room at the tollway plaza. Specifically, the court erred by not considering a variety of factors in making its determination that defendant was in custody and instead focused only on the facts that defendant was taken into the sole entrance of a law-enforcement controlled building and the door closed behind him. The State further asserts the evidence should not have been suppressed even if the arrest was unlawful.

¶ 14 We apply a bifurcated standard of review to rulings on motions to suppress. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We review the trial court's factual findings against the manifest weight of the evidence, meaning we will disturb those findings "only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). However, we may undertake

4

our own assessment of the facts in relation to the issues and may draw our own conclusions when deciding what relief may be granted. *People v. Gherna*, 203 Ill. 2d 165, 175-76 (2003). Thus, we review the ultimate issue—whether suppression is warranted—*de novo*. *Luedmann*, 222 Ill. 2d at 542.

¶ 15 " 'An arrest occurs when a person's freedom of movement has been restrained by means of physical force or show of authority.' " *People v. Workheiser*, 2022 IL App (3d) 200450, ¶ 27 (quoting *People v. Reed*, 298 Ill. App. 3d 285, 298 (1998)). The determination of whether a person is under arrest is dependent upon "whether an objective reasonable person, innocent of any crime, would conclude he is not free to leave under the circumstances." *People v. Surles*, 2011 IL App (1st) 100068, ¶ 23.

> "Although no one factor is dispositive in making the determination of whether an arrest occurred, the court can consider factors including: (1) the time, place, length, mood, and mode of the encounter between the defendant and the police; (2) the number of police officers present; (3) any indicia of formal arrest or restraint, such as the use of handcuffs or drawing of guns; (4) the intention of the officers; (5) the subjective belief or understanding of the defendant; (6) whether the defendant was told he could refuse to accompany the police; (7) whether the defendant was transported in a police car; (8) whether the defendant was told he was free to leave; (9) whether the defendant was told he was under arrest; and (10) the language used by officers." *People v. Gomez*, 2011 IL App (1st) 092185, ¶ 59.

Additional factors relevant to DUI offenses include (1) the issuance of a citation; (2) the administration of field sobriety tests; (3) transportation to a police station; (4) continued possession

of an individual's driver's license by law enforcement; and (5) the duration of the detention. *People v. Walter*, 374 Ill. App. 3d 763, 773 (2007).

¶ 16    The record reflects several of the aforementioned factors were present once defendant was taken into the squad room at the tollway plaza. Lee testified that upon arriving at the plaza, he parked outside the entrance to the squad room and "[p]ulled" defendant from the squad car. Defendant was then escorted into the squad room with one trooper in front of him and one trooper behind him. The act of pulling defendant from the squad car, combined with the two troopers restricting defendant's movement by effectively surrounding him as he was led into the building, demonstrates a show of authority by law enforcement. See *Gherna*, 203 Ill. 2d at 180; *People v. Brownlee*, 186 Ill. 2d 501, 520 (1999) (presence of two officers positioned on either side of defendant's vehicle restricted defendant's movement and constituted a show of authority).

¶ 17    Although there were no indicia of formal arrest because defendant was not handcuffed or read *Miranda* warnings, defendant evidently believed he was not free to leave. He told Lee he needed to speak with a lawyer as the squad car parked outside the squad room. He also placed his hands out to the second trooper as if expecting to be handcuffed before entering the building. Once inside, defendant said he was being held by Lee, suggesting defendant believed he was restrained. See *Brownlee*, 186 Ill. 2d at 520 ("Although the test for whether a reasonable person would have felt free to leave is an objective one, this driver's subjective reaction to the two officers' show of authority bolsters our conclusion on this matter."). Lee denied he was holding defendant but never stated defendant was free to leave. When administering the field sobriety tests, Lee told defendant he was going to conduct the tests rather than ask or request defendant submit to testing, suggesting defendant's participation was compulsory. See *Walter*, 374 Ill. App. 3d at 771 (factors indicative of an arrest include use of language indicating compliance with officer's request is compelled).

6

Additionally, as the court reasonably concluded, defendant's ability to leave was impeded by the lack of easy ingress or egress from the building based on its single point of entry and its location at the tollway plaza. In light of all the circumstances, a reasonable person in defendant's position would not have felt free to leave. Therefore, we find defendant was under arrest as he entered the squad room at the tollway plaza. The State did not challenge the court's finding there was no probable cause to support an arrest, and points not argued in appellant's brief are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 18  In reaching this conclusion, we note Lee was the only witness at the hearing on defendant's motion and the circuit court questioned the credibility of his testimony based on his inability to recall a number of significant details related to his encounter with defendant. We have affirmed orders granting motions to suppress under such circumstances. See *Motzko*, 2017 IL App (3d) 160154, ¶ 26.

¶ 19  The State further contends that even if defendant was under arrest, any evidence subsequent to the arrest should not have been suppressed. However, the hearing on defendant's motion and the State's motion to reconsider only addressed the issue of when defendant was arrested. Consequently, the State has forfeited the issue of attenuation by failing to raise it before the circuit court. See *People v. Leach*, 245 Ill. App. 3d 644, 657 (1993) (finding the State forfeited attenuation by not raising the issue at the trial level after the court determined defendant's arrest was unlawful). The State has not provided any reason to excuse the forfeiture.

¶ 20                                                    III. CONCLUSION

¶ 21  For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 22  Affirmed.

¶ 23  JUSTICE PETERSON, specially concurring:

7

¶ 24    Although I agree that the circuit court's ruling should be affirmed due to the specific facts and findings of the circuit court, I write separately because I want to make clear that the police can transport a suspect to another location, including the police department, during an investigatory detention without necessarily turning the encounter into an arrest. See *e.g. Florida v. Royer*, 460 U.S. 491, 504 (1983) ("[T]here are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention."). Thus, I do not believe the simple fact that defendant was taken to and went inside the squad room at the plaza shows that he was under arrest. Further, I do not believe this court can consider evidence after the point the court deemed defendant to be under arrest, which was once the door shut behind him at the plaza.

¶ 25    However, I agree that defendant was under arrest in this matter based on the following specific facts which show that a reasonable person in defendant's position would not have felt free to leave. First, defendant stated that he would need to call his lawyer and this request was effectively ignored by Lee. Next, Lee stated that he "pulled" defendant from the vehicle which evidences a show of authority and control over defendant. Last, as Lee led defendant into the plaza a second trooper followed and defendant put his hands up to be handcuffed. This indicated that defendant believed he was under arrest and his entry into the plaza was not voluntary. Moreover, trooper Lee did not attend a hearing for which he was subpoenaed and, when he did appear to testify, he largely could not remember any details. The lack of memory regarding the details led the court to generally find Lee lacked credibility. Specifically, the court stated, "In this case, I don't know what he remembers and what he doesn't. I am not trying to say that he was lying. *** But his recollection was certainly an issue in this matter." The court's finding that Lee lacked credibility affected the weight it gave Lee's testimony, including his testimony that defendant was

8

not under arrest until after the field sobriety tests were administered, as can be seen from the court's statements that "when it comes down to specifics, he doesn't recall. When it comes down to the generalities, \*\*\* Lee understands that if the person is detained, there is going to be a problem. So the testimony comes out, oh, no, he definitely wasn't detained. All of the evidence and facts show the contrary." Trooper Lee was the only witness presented. Because we defer to the court's findings regarding credibility, and in light of the specific facts I note above, I agree with the majority that the court did not err by determining that defendant was under arrest when he entered the squad room and the door shut behind him.

¶ 26    JUSTICE HETTEL, dissenting:

¶ 27    I respectfully dissent because I disagree with the majority's conclusion that defendant was under arrest when he entered the squad room at the tollway plaza. The majority focuses on the circumstances that were present "once defendant was taken into the squad room." However, an evaluation of the circumstances leading up to the door closing demonstrates that defendant was not unlawfully seized when Officer Lee administered the field sobriety tests.

¶ 28    "It is well settled that not every encounter between the police and a private citizen results in a seizure." *Luedemann*, 222 Ill. 2d at 544 (citing *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215 (1984)). "Courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or '*Terry* stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Id.*

¶ 29    An arrest occurs when an officer, "by means of physical force or show of authority" restrains a person's liberty. *Reed*, 298 Ill. App. 3d at 298. The relevant inquiry in determining

9

whether an individual has been arrested is whether, under the circumstances, a reasonable person would conclude that he was not free to leave. *People v. Melock*, 149 Ill. 2d 423, 437 (1992); see also *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Factors to consider, although not dispositive, include: (1) location, time, length, mood and mode of questioning; (2) the number of police officers present; (3) any indicia of formal arrest, such as showing of weapons, physical restraint, booking or fingerprinting; (4) how the individual arrived at the place of questioning; and (5) the age, intelligence, and mental makeup of the accused. *People v. Slater*, 228 Ill. 2d 137, 150 (2008). As the majority notes, in determining whether an individual has been arrested for DUI, additional factors worth considering are: "(1) the issuance of a citation; (2) the administration of field sobriety tests; (3) the transportation to a police station [citation]; (4) the police officer's continuing possession of an individual's driver's license; (5) the handcuffing of the individual or the placing of the individual into a squad car [citation]; and (6) the duration of the individual's detention [citation]." *People v. Fortney*, 297 Ill. App. 3d 79, 86 (1998).

¶ 30          We look to the totality of the circumstances to determine whether a reasonable person would feel free to leave under the circumstances. *People v. Beverly*, 364 Ill. App. 3d 361, 370 (2006). The analysis hinges on an objective evaluation of the police conduct, not on the subjective perception of the defendant. *Id.* "When one voluntarily accompanies police officers, he has not been arrested and has not been 'seized' in the fourth amendment sense." *People v. Redmond*, 341 Ill.App.3d 498, 507 (2003). Absent other factors, a defendant is not under arrest when he or she readily accompanies officers to the stationhouse, willingly rides to the station in a squad car without the use of force or handcuffs, or voluntarily waits in an interview room with the door closed. See *People v. Bolden*, 197 Ill. 2d 166, 180-81 (2001) (placing defendant in lineup did not constitute a seizure where defendant voluntarily went to the station and there was no evidence that

10

detectives threatened him); *Melock*, 149 Ill. 2d at 437-439 (1992) (defendant was not "under arrest" during police station interview where he voluntarily accompanied officers to the station, he was unrestrained during transportation, he remained in the waiting room for 30 minutes prior to the interview, and there was no evidence of formal arrest); *People v. Ollie*, 333 Ill. App. 3d 971, 981-82 (2002) (defendant was not "under arrest" when officers transported him to the station where defendant voluntarily accompanied them, officers did not use force, and defendant was not handcuffed; moreover, defendant's continued presence at the stationhouse did not progress into an illegal arrest when he was placed in an interview room with the door closed, even though defendant was not informed he could leave at any time, where officers told defendant he was not under arrest); *People v. Plumley*, 189 Ill. App. 3d 274, 279-80 (1989) (defendant was not under arrest when she accompanied officers to stationhouse to answer questions regarding the victim where a reasonable person in defendant's position would not have believe that she was under arrest based on the officers' requests).

¶ 31    Here, there is no reason to conclude that, through the time defendant submitted to field sobriety testing, Officer Lee's encounter with defendant constituted an arrest rather than an investigatory stop. Officer Lee did not issue a citation prior to arriving at the plaza, defendant was not placed in handcuffs or read *Miranda* warnings, the officers did not have possession of defendant's driver's license, and Officer Lee explicitly informed defendant that he was not under arrest. Although defendant was not told he was free to leave, no other factors indicate that Officer Lee or the other officer restrained defendant's freedom of movement. See *Ollie*, 333 Ill. App. 3d at 982. Based on this evidence, I would conclude that defendant was not under arrest when he voluntarily entered the tollway plaza squad room.

11

¶ 32          There is no dispute that defendant was not able to physically get in his car and leave. However, his inability to do so was in no way caused by the police officers. The audio recording on the video reveals that defendant freely climbed into the back of Officer Lee's squad car and asked for a ride to "159th Street." Officer Lee then stated that he was going to transport him to the nearby tollway plaza for safety reasons. Defendant responded, "Appreciate it, do it." Merely because the officer continued his investigation in a tollway plaza building does not itself amount to a seizure. See *Melock*, 149 Ill. 2d at 439; *Ollie*, 333 Ill. App. 3d at 982; *Plumley*, 189 Ill. App. 3d at 279-80. Moreover, although Officer Lee told defendant that he was going to administer field sobriety tests once inside the building, he did not *order* or *compel* defendant to submit to them. See *Walter*, 374 Ill. App. 3d at 772 ("A request to submit to a field sobriety test, without more, is still a request, and whether submission to the particular request at issue amounts to a seizure may very well depend on the many possible circumstances surround the request as well as the nature of the request itself."). Again, reliance on the audio of the recorded encounter is crucial. Officer Lee simply states, "I'm gonna do some field sobriety tests on you to make sure…oh, thank you." He did not *order* defendant to complete the tests. In fact, at no point during the conversation inside the building did Officer Lee use an aggressive or demanding tone of voice or indicate to defendant that compliance with his request was compelled, and defendant makes no such claim.

¶ 33          The majority relies on defendant's subjective belief and the presence of two officers to support its conclusion of an arrest, citing *Brownlee*, but those facts are different. In *Brownlee*, the defendant was a passenger in a car stopped by two police officers for traffic violations. After securing identification and determining that no outstanding warrants existed, the officers returned to the car. One officer stood on the driver's side of the vehicle, and the other officer stood on the passenger side. The officer on the driver's side returned all identification and explained that no

12

tickets would be issued. Then, the officers paused for a couple of minutes, saying nothing. They continued to stand one on each side of the car. Following this pause, one of the officers requested permission to search the car. The driver asked whether he had a choice in the matter and then consented. *Brownlee*, 186 Ill. 2d at 506. Applying *Terry* principles, our supreme court concluded that the officers seized the occupants by flanking the car while saying nothing for two minutes. Under the circumstances, the court found that a reasonable person would have concluded that he or she was not free to leave. *Id.* at 520. Because the officers had no probable cause or reasonable suspicion to detain the occupants, the show of authority constituted an illegal seizure in violation of the fourth amendment. *Id.* at 521.

¶ 34       Here, in contrast, nothing about the officers' demeanor or behavior at the tollway plaza suggests a seizure. Defendant's movement was not restrained by the two officers. Officer Lee walked in front of the defendant, and the other officer merely followed behind him. Defendant was not handcuffed, and neither officer escorted defendant into the plaza by means of physical contact. In fact, when defendant held his hands up, the second officer motioned to defendant that he was free to walk ahead and declined to place him in handcuffs. Unlike *Brownlee*, there is no "show of authority" to support defendant's subjective belief. See *id.* at 520.

¶ 35       In this case, the trial court concluded that Officer Lee's decision to transport defendant to the nearby tollway plaza in the interest of safety was reasonable, a ruling the record supports. The majority concludes that by conducting the field sobriety tests inside the tollway plaza building, Officer Lee transformed an otherwise reasonable police investigation into an illegal arrest. I disagree.

¶ 36       Therefore, I would find that defendant was not under arrest when he voluntarily accompanied Officer Lee into the tollway plaza squad room. When Officer Lee administered the

13

field sobriety tests to defendant, there existed a reasonable suspicion, based on specific and articulable facts, that defendant had committed DUI, and thus the testing was justified under *Terry*. See *Walter*, 374 Ill. App. 3d at 773 (Illinois law requires only reasonable suspicion to administer field sobriety tests unless the circumstances show that an arrest took place). I would reverse the trial court's order granting defendant's motion to quash and suppress and remand for further proceedings.