2026 IL App (2d) 250399-U
No. 2-25-0399
Order filed June 22, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

MARK S. MALLO, Defendant-Appellant.

Appeal from the Circuit Court of De Kalb County.

Honorable Stephanie P. Klein, Judge, Presiding.

No. 24-DT-13

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State proved defendant guilty beyond a reasonable doubt of driving under the influence and improper lane usage.  The trial court did not err in denying defendant's motion to suppress.

¶ 2    Following a bench trial, defendant, Mark Mallo, was found guilty of driving under the influence (625 ILCS 5/11-501(a)(2) (West 2024)) and improper lane usage (*id.* § 11-709(a)).  On appeal, defendant argues that the trial court erred in denying his pretrial motion to suppress and that the evidence was not sufficient to prove him guilty beyond a reasonable doubt.  We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On January 20, 2024, defendant was charged by traffic complaint with the offenses of which he was convicted.  Prior to trial, defendant filed a motion to quash arrest and suppress

evidence, arguing that his detention and arrest were not supported by reasonable suspicion or probable cause.

¶ 5    On March 14, 2025, the trial court held a hearing on defendant's motion. Ryan Loyd testified that, on January 20, 2024, he was employed as a De Kalb County sheriff's deputy. At 1:37 a.m., he was dispatched to the intersection of Cherry Valley and Kingston Roads due to a truck in a ditch. He was driving a marked squad car. Temperatures and wind chills were below zero and, although the roads were clear, packed ice and snow remained on the shoulders and in the ditches. When Loyd arrived, another deputy, Ryan Fox, was already on the scene and was running defendant's driver's license information. Defendant was standing outside the vehicle on the passenger's side. Although Loyd did not specifically ask whether defendant was the driver, he asked what had happened, and defendant stated that he lost control and went into the ditch. Loyd took defendant's statement as an admission that defendant had been driving. It appeared there had been attempts to remove the vehicle from the ditch. Defendant was wearing blue jeans, brown leather dress shoes, and a button-up shirt with a quarter-zip pullover. His jeans were wet and frozen from the knee down, his shoes were wet, and he was not wearing a hat or gloves. Defendant mentioned that he was cold.

¶ 6    Loyd asked defendant to perform some field sobriety tests because he detected an odor of alcohol and believed defendant's speech was slurred. Loyd was wearing a body camera that recorded audio and video. He first administered the horizontal gaze nystagmus (HGN) test according to National Highway Traffic Safety Administration (NHTSA) standards. Defendant walked about 30 feet to the front of Loyd's patrol car without difficulty, and the test took a couple of minutes to complete. Loyd then asked defendant to perform a walk-and-turn test but offered him an opportunity to first sit in the patrol car and warm up, which defendant accepted. Defendant

was not handcuffed, Loyd told defendant he was not under arrest, and Loyd believed the squad-car door was not latched, although defendant was not free to leave. Loyd could not remember whether defendant attempted additional field sobriety tests at the scene but recalled that defendant agreed to accompany him to the Kingston police department, about six minutes away, to perform further testing. Loyd never informed defendant that he could refuse the tests. Before additional testing, defendant stated that he could not feel his toes, and Loyd allowed him to warm his feet using HotHands packets. Defendant then completed the nine-step walk-and-turn test and the one-leg stand test, which Loyd scored according to NHTSA standards. Defendant refused a portable breath test. After that, which was about 3 a.m., Loyd arrested defendant. Loyd testified that he had conducted about 200 DUI investigations during his career. Although transporting a subject to a police station for field sobriety testing was not typical, Loyd testified that it was not uncommon under the weather conditions present that night.

¶ 7    On cross-examination, Loyd acknowledged that he was retired, after serving 25 years with the sheriff's office. During that time, he received training regarding the indicia of intoxication. He testified that there was a substantial amount of snow along the roadside on the day of the incident. Although he did not observe anyone attempting to remove the vehicle from the ditch, he saw a ratchet strap attached to the rear of the truck. Defendant was friendly, conversational, polite, and responsive. Defendant told Loyd that he was driving home from an office Christmas party and that he had been drinking. Defendant was unable to identify his location. Loyd testified that he had made multiple DUI arrests and observed many individuals under the influence at varying levels of intoxication. Based on his experience, defendant appeared to have been drinking, and Loyd would not have allowed him to drive away. Defendant willingly accompanied Loyd to the Kingston police department, and Loyd did not force him into the squad car. Once there, Loyd

allowed defendant additional time to warm up because he wanted defendant to perform as well as possible on the field sobriety tests. After defendant completed the tests, Loyd concluded, based on the totality of his observations, that defendant was under the influence and placed him under arrest. Loyd identified defendant in court.

¶ 8    On redirect examination, Loyd testified that, when speaking with defendant at the scene, defendant had a flushed complexion and red, watery, bloodshot, dilated eyes. Based on those observations, Loyd believed defendant was under some level of influence. Loyd acknowledged that, after making those observations, he continued to detain defendant for approximately 45 minutes before arresting him and that defendant was not free to leave during that period. On recross-examination, Loyd explained that approximately one-third to one-half of the detention period prior to arrest was spent allowing defendant to warm up.

¶ 9    Thereafter, the parties stipulated to the foundation for Defense Exhibit 1, the video from Loyd's body-worn camera, and it was admitted into evidence. The video was played in court, and the defense rested. The State then recalled Loyd, who testified that he made numerous accommodations to allow defendant to warm up before performing the field sobriety tests at the police station because he wanted defendant to perform as well as possible.

¶ 10    A review of the video shows that, when Loyd first arrived, the truck was situated in a mound of snow, with the highest accumulation adjacent to the driver's side door. Defendant was standing behind the truck handing Fox his driver's license. Fox gave the driver's license to Loyd, who placed it in his squad car. Loyd then approached defendant, who was standing on the passenger side of the truck. During the initial encounter, Loyd asked defendant where he was coming from. Defendant responded, "I honestly I don't even know, I was trying to get west, trying to get back to the highway, like trying to take the best route, and it didn't work out." Defendant

stated that he was driving from Genoa to his home in Loves Park, and he was trying to get back to Route 23. Defendant acknowledged that he was well west of Route 23. When Loyd asked defendant if he knew where he was, defendant stated he was between Elgin and Rockford. Defendant stated that he had been drinking. He believed it was about 10 p.m. and that his last drink was about two hours earlier. Defendant then stated that he had about four drinks, and was coming home from a company Christmas party in Addison. At about the time the HGN test was administered, defendant stated that he was nervous and probably drank more than he should have. When defendant entered the squad car to warm up before attempting a walk-and-turn test at the scene, Loyd deactivated the audio on his body-worn camera. Defendant exited the squad car approximately four minutes later, but the audio was not reactivated until about two minutes after that. During that interval, defendant and Loyd appeared to converse, but the conversation was not recorded. During the audio-recorded portions of the video, defendant never specifically stated that he lost control of the vehicle and went into the ditch. At the Kingston police department, before his arrest and while discussing his attire with Loyd, defendant stated that he had boots in the truck.

¶ 11     In closing argument, defendant asserted that his detention was unreasonably prolonged and therefore exceeded the scope of the brief investigatory detention permitted under *Terry*. Defendant noted that Loyd arrived at the scene at approximately 1:47 a.m. and that he was not arrested until about 3 a.m. Defendant argued that he was never advised that he could refuse to perform field sobriety tests. He further argued that Loyd's statement, that if he was going to perform the tests he would want to do them in the best possible location, implied that defendant was required to submit to testing. Defendant also maintained that he did not agree to be relocated to the police station, but merely indicated that he could not perform the tests at the scene. According to defendant, he "could have been under arrest at any point throughout this entire hour because he

- 5 -

was not able to leave." Based on these circumstances, defendant argued that his detention was unlawful.

¶ 12　The State argued that the video showed only 51 minutes elapsed between Loyd's arrival and defendant's arrest. According to the State, much of that time was spent allowing defendant to warm up before completing the field sobriety tests. The State further argued that Loyd was friendly and accommodating, giving defendant multiple opportunities to warm up and perform the tests under the best possible conditions. The State also maintained that defendant's wet and frozen clothing resulted from his own actions after the truck entered the ditch. Accordingly, the State argued that the motion to suppress should be denied.

¶ 13　Following arguments, the trial court noted that the material facts were undisputed because the video depicted the events of that evening. The trial court made the following findings based on the video. Approximately 51 minutes elapsed between Loyd's arrival on the scene and defendant's arrest. From Loyd's first interaction with defendant, defendant appeared confused about his location, and his speech was at times slurred. Defendant admitted he had been drinking and stated that he probably had more than he should have at the party. The roads appeared to be clear and dry. Loyd asked defendant to perform some field sobriety tests, and defendant agreed. About 11 minutes into the detention, Loyd asked defendant whether he wanted to warm up in the back of the squad car. When defendant entered the vehicle, Loyd specifically told him he was not under arrest. After three or four minutes, defendant exited the squad car and went to his truck to retrieve his coat. Loyd then administered the walk-and-turn test. Defendant stated that he was so cold his legs were shaking. Loyd asked whether defendant would prefer to perform the tests at a nearby police department where conditions would be more favorable. Defendant ultimately stated that he could not complete the field sobriety tests at the scene and returned to the squad car. When

defendant reentered the vehicle, Loyd again told him he was not under arrest. They arrived at the Kingston police station approximately 25 minutes into the detention. Almost immediately upon entering, Loyd explained the walk-and-turn test, but defendant asked to warm his toes before beginning, which Loyd allowed so that defendant could have the best opportunity to perform the tests. Defendant performed the walk-and-turn test twice. Loyd then instructed defendant on the one-leg stand test, during which defendant again stated he was cold and removed his shoes. Defendant then performed the alphabet and backward-counting tests. Before doing any other tests, defendant sat down to massage his feet with some hand warmers. After stating he had regained feeling in his toes, defendant attempted the one-leg stand test. Loyd then explained the portable breath test, but defendant refused to take it. After that, about 51 minutes into the detention, Loyd placed defendant under arrest.

¶ 14    The trial court found that the majority of the time between Loyd's initial interaction with defendant and the arrest was spent accommodating defendant because of the cold temperatures and giving him the opportunity to perform the tests in a safe and warm environment, where his performance would not be affected by the weather conditions. The trial court found that Loyd acted reasonably and that the detention was justified by the circumstances. The trial court also stated that there was no show of force and that, at the police station, nothing stood between defendant and the exit door. The trial court concluded that there was no unlawful seizure and denied the motion to suppress.

¶ 15    A bench trial was held on April 23, 2025. At trial, Loyd testified that during his 25 years of service, he received training at both the academy and the sheriff's office in conducting standardized field sobriety tests and investigating DUI and traffic violations. On January 20, 2024, he was dispatched to the intersection of Cherry Valley and Kingston roads in response to a report

of a "driver in the ditch." When he arrived on the scene, Deputy Fox was already present, and Loyd observed another vehicle driving away. Loyd identified defendant in court as the person he encountered at the scene. Loyd testified that defendant told him he had been driving but lost control of the vehicle due to road conditions. Defendant stated that he was traveling from Addison to his home in Loves Park. During his conversation with defendant, Loyd observed that defendant's pants zipper was down, the crotch area of his pants was wet, his pants were frozen from the knees down, and his shoes were wet. He also noticed that defendant's eyes were bloodshot and glassy. Defendant's speech was slurred, and his breath had a strong odor of alcohol. When questioned, defendant admitted that he had been drinking. Defendant stated that he had four drinks and his last drink was about two hours before the conversation. Defendant told Loyd that it was about 10 p.m., when in fact it was closer to 2 a.m. Based on his observations and conversations with defendant, Loyd believed it was appropriate to conduct field sobriety tests.

¶ 16    Loyd further testified that he first administered the HGN test. Before beginning, he normally asked prescreening questions and made prescreening observations. His prescreening questions included whether defendant wore glasses or contact lenses and whether defendant could see the tip of the pen used to conduct the test. His prescreening observations included whether defendant exhibited equal tracking and equal pupil size in both eyes. During that test, Loyd looked for three clues: lack of smooth pursuit, sustained nystagmus at maximum deviation, and the onset of nystagmus prior to 45 degrees. He looked for each clue in both eyes. Defendant exhibited all three clues in each eye, resulting in a score of six. A score of four indicated alcohol consumption. Loyd then explained the nine-step walk-and-turn test. Defendant attempted the test but stated that he was cold, so Loyd allowed him to warm up in the back of the squad car for about five minutes.

Loyd did not believe there were any other field sobriety tests administered at the scene because defendant agreed to complete them at a nearby police station in Kingston.

¶ 17    When they arrived at the Kingston police station, Loyd immediately instructed defendant on how to complete the nine-step walk-and-turn test. He told defendant to stand with his right foot on an imaginary line, his left foot in front touching heel to toe, his hands at his sides, and not to do anything until further instructed. This instruction phase was part of the test and was used to determine a person's ability to maintain balance while receiving instructions. During the test, Loyd looked for the following clues: failing to touch heel to toe, stepping off the line, raising one's arms for balance, stopping while walking, taking an incorrect number of steps, and making an improper turn. Defendant failed the instruction phase and, during the test, exhibited all of the clues except stopping while walking. Two clues indicated impairment by alcohol, and defendant exhibited seven clues during the test.

¶ 18    Loyd then administered the one-leg stand test. He explained that, during that test, the subject was instructed to raise either foot six inches off the ground, keeping his leg straight with his toe pointed, look at his toe, keep his hands at his sides, and count for 30 seconds. The clues observed during the test were hopping while balancing, putting one's foot down, raising one's arms for balance, and swaying. During the test, Loyd observed all four clues. Two clues were indicative of alcohol impairment.

¶ 19    Loyd also conducted an alphabet test and a counting test. Loyd instructed defendant to recite a portion of the alphabet and then count backwards from one number to another. Loyd could not recall how defendant performed on the alphabet test but testified that defendant had one or two mishaps during the counting test. After completing all the field sobriety tests, Loyd formed an opinion that defendant was under the influence. Loyd testified that he had observed numerous

individuals under the influence, "too many to count," during both his law-enforcement career and his college years working as a bartender. Loyd based his opinion on defendant's appearance, mannerisms, performance on the field sobriety tests, and the fact that defendant had driven his vehicle into a ditch. Loyd further testified that his opinion was based on the condition of defendant's eyes, his speech, the condition of his clothing, and his orientation to time and place.

¶ 20 After forming his opinion that defendant was under the influence, Loyd placed defendant under arrest and transported him to the De Kalb County sheriff's office. There, he read defendant the Warning to Motorist and requested that defendant submit to a breath test, which defendant declined. The State introduced Exhibit 1, the video from Loyd's body-worn camera, without objection. The State then played excerpts from the video in open court.

¶ 21 On cross-examination, Loyd testified that he could not recall whether there were streetlights at the scene. When he arrived, defendant was not in the truck, and there were snow tracks and tire tracks around the vehicle. He was not sure how long defendant had been at the scene before his arrival. He acknowledged that it had been long enough for defendant's pants to freeze, his shoes to become wet, and for defendant to become visibly cold. Defendant was not wearing a winter coat, hat, or gloves. The only time Loyd saw defendant in the truck was when he retrieved his jacket. Loyd never saw defendant driving the truck and did not witness any traffic violations. Although Loyd did not believe defendant had slid into the ditch due to road conditions, he acknowledged that it was possible. The vehicle was sitting on packed ice and snow, and only a portion of it was lodged in a mound of snow. When Loyd approached, defendant was outside the truck assessing whether there was any damage. There was about a foot of snow in the ditch area, and the shoulders of the road were covered with packed ice and snow. Loyd could not recall whether the fog line was covered by snow. He further acknowledged that defendant stated his last

drink was at 8 p.m., meaning that five hours had elapsed before their interaction. Loyd agreed that defendant answered all of his questions, was polite and cooperative, and was not speaking with a thick slur.

¶ 22 Loyd further testified that he administered the HGN test at the scene in front of his squad car. During the test, defendant did not have difficulty balancing. At the scene, defendant was able to walk to his truck and to the squad car without difficulty. Regarding the HGN test, Loyd testified that the six clues he observed were indicative of alcohol consumption. When asked whether those clues indicated that a person was above the legal limit, Loyd responded that they indicated "a likelihood that they're above the legal limit," but he could not recall if it was conclusive as to the issue.

¶ 23 Loyd acknowledged that there were strict instructions for how to administer the walk-and-turn and the one-leg stand tests, and that proper administration and instructions were required for reliable results. Loyd acknowledged that defendant complained of being frozen, cold, and unable to feel his toes, feet, or shins, but testified that he would have taken those conditions into account when administering the tests outdoors. He agreed that he told defendant that feeling one's toes was essential for balance. Loyd could not recall whether he instructed defendant to keep his hands at his side during the walk-and-turn test performed at the scene. Loyd acknowledged that, when demonstrating the walk-and-turn test, he showed only five steps, took a small series of steps to turn around, and then took five steps back. He further acknowledged that his instructions were improper because he did not explain that the lead foot should remain on the line during the turn. Loyd acknowledged that defendant was shaking, cold, and frozen while performing the tests, and that it was possible a person in defendant's position could be experiencing hypothermia.

Defendant also told Loyd that, on a scale of 1 to 10, he considered himself to be a 3 or 4 in terms of intoxication.

¶ 24 On redirect examination, Loyd testified that defendant told him he had been driving the vehicle at issue. The streets were not covered with snow and the fog line was likely visible. Loyd had no difficulty driving his squad car to the scene. He observed tire tracks around the vehicle and believed that some of them originated from the vehicle in the ditch. He offered defendant opportunities to warm up because he believed doing so would improve defendant's performance on the field sobriety tests. He allowed defendant time to warm up before the walk-and-turn tests and additional time before the one-leg stand test. The State rested.

¶ 25 Defendant filed a motion for directed finding. Defendant argued that, other than his confession, there was no corroborating evidence that he was driving or in control of the truck. There was no showing that defendant had the keys, that the truck was registered to him, that he was in the driver's seat, or that he had insurance on the truck. Defendant also argued that the walk-and-turn and one-leg stand tests were administered improperly and that the results were therefore unreliable. He asserted that, in the absence of the allegedly unreliable field sobriety tests, there was no proof that he was under the influence.

¶ 26 The State argued that there was corroborating evidence that defendant drove the truck, noting that defendant provided details regarding the route he was taking home before becoming stuck in the ditch and that tire tracks showed the truck's path of travel. The State further argued that there was sufficient evidence to establish that defendant was under the influence. Loyd observed an odor of alcohol on defendant's breath and slurred speech. The results of the HGN test were indicative of alcohol consumption. During the two walk-and-turn tests at the police station, defendant lost his balance on both occasions and had to grab the wall for support. The State argued

that, even if defendant was not given proper instructions, he was unable to walk a straight line, touch heel to toe, or maintain his balance. Defendant also failed the one-leg stand test by swaying, raising his arms, hopping, and putting his foot down. Finally, the State also noted that defendant admitted drinking alcohol and did not know the correct time when questioned at the scene.

¶ 27 Thereafter, the trial court denied the motion for a directed finding and the defense rested. Following closing arguments, which largely reiterated the arguments made in closing on the motion for directed finding, the trial court found defendant guilty of driving under the influence and improper lane usage. The trial court stated that it would "strain credulity" to find that defendant was not the driver of the truck when he was next to it in a rural area in snow and freezing cold weather. The trial court further stated it did not know how defendant or the truck could have ended up on the side of the road in a rural area, noting that "they probably were not dropped there by helicopters." The trial court found sufficient evidence that defendant was under the influence, observing that the video showed defendant's balance issues during the walk-and-turn and the one-leg stand tests "were not small ones." The trial court further observed that defendant could walk normally when using both hands and feet, but exhibited clear balance issues when performing the field sobriety tests. The trial court also noted that the vehicle had clearly been driven off the roadway. Based on Loyd's credible testimony and the video evidence, the trial court found that defendant's clothing was disheveled, his zipper was undone, and his perception of time and location was inaccurate. The trial court sentenced defendant to 18-months' conditional discharge for DUI and imposed a fine for improper lane usage. Defendant filed a motion to reconsider, arguing that he was not proved guilty beyond a reasonable doubt but raising no argument regarding the denial of his motion to suppress. Following the denial of his motion to reconsider, defendant filed a timely notice of appeal.

¶ 28                                    II. ANALYSIS

¶ 29                            A. Driving Under the Influence

¶ 30    Defendant's first contention on appeal is that the State failed to prove him guilty beyond a reasonable doubt of driving under the influence.  He asserts that he never admitted driving the truck and that, even if his statements could be construed as an admission, no independent evidence corroborated that he was the driver or otherwise established that he was in actual physical control of the vehicle.  Defendant further contends that there was insufficient evidence to prove that he was under the influence of alcohol.

¶ 31    "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt."  *People v. Collins*, 106 Ill. 2d 237, 261 (1985).  In reviewing a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant.  *Id.*  Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.)  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  This standard applies regardless of whether the evidence is direct or circumstantial and regardless of whether the defendant received a bench or jury trial.  *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 32    The trier of fact is responsible for assessing the credibility of the witnesses, determining the weight to be given to their testimony, resolving conflicts in the evidence, and drawing reasonable inferences therefrom.  *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001).  This court will not substitute its judgment for that of the trier of fact on these matters.  *Id.*  Further, the trier of fact is not required to disregard reasonable inferences that flow naturally from the evidence or to seek out

all possible explanations consistent with innocence and elevate them to the level of reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 33    Circumstantial evidence may be used to prove the presence of alcohol in a defendant's breath or blood. *People v. Kathan*, 2014 IL App (2d) 121335, ¶ 20. Circumstantial evidence is proof of facts and circumstances from which the trier of fact may infer other connected facts that reasonably and ordinarily follow according to common experience. *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010). A conviction for DUI may rest solely on the credible testimony of the arresting officer. *People v. Janik*, 127 Ill. 2d 390, 402 (1989). Relevant evidence of intoxication includes the odor of alcohol on a defendant's breath, glassy or bloodshot eyes, and refusal to submit to chemical testing, which may be considered evidence of consciousness of guilt. *People v. Love*, 2013 IL App (3d) 120113, ¶ 35.

¶ 34    Here, defendant was charged with violating section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2024)), which prohibits a person from driving or being in actual physical control of a vehicle while under the influence of alcohol. Proof of a criminal offense requires the State to establish both that a crime occurred, known as the *corpus delicti*, and that it was committed by the person charged. *People v. McKown*, 2022 IL 127683, ¶ 45. "The *corpus delicti*, or the commission of a crime, generally cannot be proven by a defendant's admission, confession, or out-of-court statement alone." *Id.* Rather, when an admission forms part of the State's proof of the *corpus delicti*, the State must present independent corroborating evidence that a crime occurred. *Id.* The corroborating evidence need only tend to show, in a general sense, that a crime occurred; it need not be sufficient, standing alone, to prove the charged offense beyond a reasonable doubt. *Id.* ¶ 46. "The requirement that corroborative evidence tend to show the commission of a crime cannot be construed to require that the same corroborative

evidence foreclose every other possible explanation of that evidence." *People v. Underwood*, 2019 IL App (3d) 170623, ¶ 17. Further, "if there is evidence of corroborating circumstances which tend to prove the *corpus delicti* and correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case." (Internal quotation marks and citation omitted.) *People v. Willingham*, 89 Ill. 2d 352, 359 (1982).

¶ 35                                                    1. Standard of Review

¶ 36    At the outset, defendant raises two arguments concerning the applicable standard of review. Defendant first contends that, because he does not dispute the underlying facts or the credibility of the witnesses and instead argues only that the undisputed facts are insufficient to prove the elements of the offense, his challenge to the sufficiency of the evidence is subject to *de novo* review. In support, he relies on *People v. Smith*, 191 Ill. 2d 408 (2000) and *In re Ryan B.*, 212 Ill. 2d 226, 231 (2004). However, our supreme court explained in *People v. Jones*, 2023 IL 127810, ¶¶ 22-24, that *de novo* review applied in *Smith* and *Ryan B.* because those cases presented legal questions concerning the meaning and scope of statutory elements, rather than questions regarding the sufficiency of the evidence. As the *Jones* court explained, the issue in *Ryan B.* was whether asking a child to lift her shirt constituted enticing, coercing, or persuading within the meaning of the sexual exploitation of a minor statute. *Id.* ¶ 23. Likewise, the issue in *Smith* was whether the defendant committed armed violence within the meaning of the statute after dropping an unloaded gun out his window before police entered his apartment. *Id.* ¶ 24. As the present case presents no question concerning the meaning or scope of a statutory element and instead concerns only whether the evidence sufficiently established the relevant facts, defendant's reliance on *Smith* and *Ryan B.* is misplaced.

¶ 37 Defendant next argues that whether the State presented sufficient corroborating evidence of an extrajudicial admission is a question of law subject to *de novo* review, citing *People v. Lara*, 2012 IL 112370, ¶ 16. Defendant's reliance on *Lara* is likewise misplaced. At issue in *Lara* was "the legal question of whether all elements *** of a charged offense must be supported by independent evidence before a defendant's inculpatory statement may be used to establish the *corpus delicti* of the offense." *Id.* ¶ 48. The court concluded "that the *corpus delicti* rule does not universally mandate corroboration of every element of every charged offense" and that it "need not precisely align with the details of the confession on each element of the charged offense, or indeed to any particular element of the charged offense" *Id.* ¶¶ 30, 51. Thus, *Lara* addressed the scope or interpretation of the *corpus delicti* rule, a question of law, rather than whether the evidence was sufficient to establish the facts underlying the charged offense. Moreover, *Lara* reaffirmed that, although the interpretation of the rule is a question of law, the weight of the corroborating evidence and the reasonable inferences to be drawn from it remain matters for the trier of fact. *Id.* ¶¶ 17, 46-47. Here, whether defendant was driving the truck and whether he was under the influence of alcohol while doing so are questions of fact, not questions of law. See *People v. Galarza*, 2023 IL 127678, ¶ 51 (whether the defendant was the driver is a question of fact); *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57 (whether the defendant was under the influence is a question of fact). Accordingly, we reject defendant's assertion that *de novo* review applies and review his challenge to the sufficiency of the evidence under the standard set forth in *Collins*, 106 Ill. 2d at 261.

¶ 38                                   2. Defendant's Admission

¶ 39 Defendant argues that he never made an admission that he was driving. However, this argument is inconsistent with his position both at trial and in his motion to reconsider. During

closing argument at trial, defense counsel acknowledged that defendant had confessed to driving the vehicle, arguing instead that the confession was insufficient because it lacked corroboration. Specifically, counsel argued that "there was a confession by [defendant] that he had been driving the vehicle. However, that is not enough *** to find him in control of the vehicle. It has to be corroborated with some other evidence." Likewise, when the State argued in closing that "the defendant does admit that he was driving the vehicle," defendant raised no objection. Further, in his motion to reconsider, defendant argued that the trial court improperly relied on his "uncorroborated out of court statements that he was driving the vehicle on the night of the arrest" and asserted that he "made out-of-court statements that he drove the vehicle and was on his way back from a work event." Thus, throughout the trial court proceedings, defendant's position was not that he never admitted driving, but that his admission was insufficiently corroborated. Accordingly, defendant's assertion that he never admitted driving the truck is forfeited. See *People v. Hughes*, 2015 IL 117242, ¶¶ 40, 45-47 (holding that the defendant forfeited his argument on appeal that his confession was involuntary because, throughout trial and in posttrial proceedings, he challenged only the reliability of his confession rather than its voluntariness).

¶ 40                    3. Corroborating Evidence that Defendant was Driving

¶ 41    In determining whether there was sufficient corroborating evidence to show that defendant was driving the vehicle, *Underwood*, 2019 IL App (3d) 170623, is instructive. In that case, an officer responded to the scene of an accident, involving two vehicles and two individuals, one of whom was the defendant. *Id.* ¶ 4. The officer could not recall whether either individual was inside a vehicle when he arrived. *Id.* The defendant admitted she was the driver of one vehicle and described in detail how the accident occurred. *Id.* ¶ 5. Based on his experience in accident reconstruction, the officer opined that the damage to the vehicles was consistent with the

defendant's version of events. *Id.* The officer did not know how long the vehicles had been at the scene and acknowledged that the vehicle driven by the defendant was registered to someone other than the defendant. *Id.* ¶ 6.

¶ 42 The defendant was found guilty of driving while her license was suspended. *Id.* ¶ 7. On appeal, she argued that the State failed to prove the *corpus delicti* because there was insufficient corroborating evidence of her admission. *Id.* ¶ 9. In addressing that issue, the reviewing court acknowledged that the defendant did not have the keys to the vehicle and was not the registered owner. *Id.* ¶ 20. Nonetheless, the court determined that the defendant's knowledge of how the traffic accident occurred, along with evidence that she was the only person in the vicinity of the vehicle, was sufficient corroborating evidence to support her admission that she drove the vehicle. *Id.* ¶ 15. The court acknowledged the defendant's arguments that she could have merely witnessed the accident or been a passenger in the vehicle but explained that corroborative evidence need not foreclose every other possible explanation of the evidence. *Id.* ¶ 17. Rather, noting that the threshold for corroborating evidence was low and that the simplest explanation was that the defendant was the driver, the court held that the corroborating evidence was sufficient. *Id.*

¶ 43 As in *Underwood*, there was sufficient corroborating evidence in this case to establish that defendant was the driver of vehicle. Defendant was able to explain where he had been headed before the accident, stating that he was attempted to travel west from a Christmas party to his home and that "it didn't work out." Defendant was the only person present when officers made contact with him at the scene in a rural area. Defendant also demonstrated a possessory connection to the truck: at the scene, he retrieved his jacket from the vehicle, and later, while speaking with Loyd at the Kingston police station about his attire, he stated that he had boots in the truck. Finally, video footage showed defendant providing his driver's license to an officer at the scene, conduct

consistent with his admission that he had been driving the truck. In addition, his refusal to submit to a breath test supports an inference that he was concerned about discovery of his potential impairment, a concern that would presumably be an issue only if he had been driving. Consistent with the threshold for corroborating evidence exemplified in *Underwood*, these facts tend to support the reliability of defendant's admission that he was the driver of the truck. *Id.* ¶ 15; *People v. Robertson*, 2024 IL App (1st) 220796-U, ¶¶ 42, 44 (finding sufficient corroboration where the defendant was the only person in proximity to the vehicle, complied with the officer's request for her driver's license and insurance information, and provided a false urine sample demonstrating consciousness of guilt regarding driving a vehicle while potentially impaired).[1]

¶ 44    Defendant argues that *Underwood* is distinguishable because he never stated that he was the driver and did not provide specific details about how the truck came to rest in the snowbank. We have already rejected defendant's contention that he never admitted driving the vehicle. Further, although defendant did not provide the same detailed account of the incident as the defendant in *Underwood*, the significance of that case is not in the precise nature of the corroborating evidence but rather the principle that corroborating evidence need only tend to support the reliability of the admission. *Underwood*, 2019 IL App (3d) 170623, ¶ 17. Here, defendant was the only person present when the officers encountered him, demonstrated a possessory connection to the truck, provided his driver's license to officers at the scene, and refused a breath test. As explained, these circumstances sufficiently corroborated his admission.

---

[1]We may rely on the reasoning of a nonprecedential decision under Illinois Supreme Court Rule 23 (eff. June 3, 2025). *Zhao v. State Farm Fire & Casualty Co.*, 2025 IL App (2d) 240723, ¶ 30; *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1.

¶ 45    Defendant further argues that *Underwood* is inapplicable because the circumstances here undermine, rather than corroborate, his admission.  Specifically, he notes that Loyd testified that it was possible the truck slid into the snowbank because of road conditions and that a third vehicle drove away as Loyd arrived, suggesting that someone else may have been driving.  These arguments merely identify competing inferences that could be drawn from the evidence, the resolution of which was for the trier of fact.  *People v. Hubbell*, 2021 IL App (2d) 190442, ¶ 14.  The video showed that the roadways were generally clear, with snow and ice primarily accumulated along the sides of the roads, supporting a reasonable inference that defendant drove into the snowbank because of impairment rather than road conditions.  Likewise, although the departing vehicle could have contained another potential driver, the trial court could reasonably infer that it belonged to a person who stopped to assist defendant in removing the truck from the snowbank.  As *Underwood* makes clear, corroborating evidence need not foreclose every alternative explanation; it need only tend to support the reliability of the admission.  *Underwood*, 2019 IL App (3d) 170623, ¶ 17.  Here, defendant was the only person present when officers made contact with him, and there was no direct evidence that anyone else had been driving the truck.  Accordingly, the trial court could reasonably infer that defendant was the driver and conclude that sufficient corroborating evidence supported the reliability of his admission.

¶ 46    In arguing that there was insufficient corroborating evidence, defendant relies on *People v. Foster*, 138 Ill. App. 3d 44 (1985) and *Village of Round Lake v. Delatorre*, 2021 IL App (2d) 190066-U.  In *Foster*, the defendant was found guilty of driving with a blood alcohol concentration above the legal limit and argued on appeal that the State failed to prove the *corpus delicti* of the offense.  *Foster*, 138 Ill. App. 3d at 46.  The evidence showed that, when an officer arrived at the scene of a one-car accident, the defendant was asleep in the passenger seat and another individual

was asleep in the driver's seat. *Id.* at 45. At the scene, the defendant told the officer twice that he was driving at the time of the accident, but at the police station he denied being the driver. *Id.* at 46. The reviewing court reversed the conviction, concluding that there was insufficient corroborating evidence to support the defendant's initial admission that he had been driving. *Id.* at 47. In doing so, the court emphasized that the defendant was found in the passenger seat, there was no evidence surrounding the circumstances of the accident or how long the vehicle had been at the scene, no evidence as to ownership of the vehicle, and the defendant later denied being the driver at the police station. *Id.* at 46-47. The court also noted that the defendant was not arrested for DUI until several months after the accident because the responding officer initially believed the defendant's statement that he was not the driver. *Id.* at 47.

¶ 47 In *Delatorre*, an officer arrived at a courtyard in response to a report of domestic violence that had occurred at a different location. *Delatorre*, 2021 IL App (2d) 190066-U, ¶ 4. In the courtyard, the defendant and another individual were standing near a white car, and another man was present inside a different vehicle. *Id.* The defendant stated that she had driven to the location in the hopes of finding her boyfriend and that the person standing next to her had arrived in the other vehicle. *Id.* Based on her speech and appearance, the officer asked the defendant to perform field sobriety tests, after which she was arrested for DUI. *Id.* ¶ 5. While being booked at the police station, the defendant denied driving the vehicle. *Id.* The defendant was charged with one count of DUI and, following a bench trial, was found guilty of the offense. *Id.* ¶ 2. The trial court found that the defendant's admission that she drove the vehicle was sufficiently corroborated by the presence of the vehicle, her act of identifying it as the vehicle she drove, and the presence of two men with her. *Id.* ¶ 6.

¶ 48    On appeal, the defendant argued that the State failed to prove the *corpus delicti* of the offense. *Id.* ¶ 8.  This court held that there was insufficient corroborating evidence that the defendant drove the vehicle.  We noted that, aside from her admission, the evidence showed only that she and two men traveled in two vehicles to the courtyard. *Id.* ¶ 11.  The defendant was not observed in the driver's seat, there was no evidence that she possessed the keys to the vehicle, and there was no evidence that she owned or regularly drove the vehicle. *Id.*  This court further explained that the facts did not compare favorably to other cases in which courts had found sufficient corroboration of a defendant's admission to driving. *Id.* ¶ 12.  We discussed two such cases.  In one, a car had collided with a bridge, and the defendant admitted he was driving and later went home after the collision. *Id.* (citing *People v. Sanchez*, 2019 IL App (3d) 160643).  The *Sanchez* defendant's admission was sufficiently corroborated by evidence that the vehicle was registered to him and he was found at his home a few blocks away with the keys to the vehicle in his possession. *Id.*  In another case, the defendant was found guilty of DUI and other offenses following a traffic accident. *Id.* (citing *People v. Rhoden*, 253 Ill. App. 3d 805 (1993)).  The *Rhoden* defendant's admission to driving was corroborated by evidence that he owned the vehicle, was standing next to it after the accident, a victim was pinned under the passenger side of the vehicle, and he exhibited possessive behavior suggesting he would not have allowed another person to drive his car. *Id.*

¶ 49    Defendant argues that, as in *Foster* and *Delatorre*, there was insufficient corroborating evidence of his extrajudicial admission because the State failed to establish that he owned the truck, that it was registered to him, that he possessed keys to the truck, he was not found in the driver's seat, and there was no evidence of the circumstances surrounding the accident or how long the truck had been there.

¶ 50 Defendant's reliance on *Foster* and *Delatorre* is unpersuasive. Both cases are distinguishable on their facts. Unlike the defendant in *Foster*, defendant was not found in the passenger seat of the vehicle and, unlike in *Foster* and *Delatorre*, defendant was the only person present when the officers encountered him and he never denied that he was the driver. Moreover, defendant's statement that his last drink occurred only hours earlier supported a reasonable inference that the incident had occurred recently. More importantly, the corroborating circumstances here established a stronger connection between defendant and the truck than existed in *Foster* or *Delatorre*. Defendant never retracted his admission to driving the truck, described his travel from a Christmas party toward his home, was found alone at the scene, and demonstrated a possessory connection to the vehicle through the personal items he kept inside it. Further, "that certain evidence is sufficiently corroborative in one fact-specific case *** does not mean that the absence of such evidence in another case is fatal." *Underwood*, 2019 IL App (3d) 170623, ¶ 20; *People v. Slinkard*, 362 Ill. App. 3d 855, 859 (2005) (whether a defendant exercised control over a vehicle must be determined on a case-by-case basis). Thus, the absence of evidence that defendant owned the truck, that it was registered to him, or that he possessed the keys is not dispositive. Viewing the evidence in the light most favorable to the State, defendant's admission, considered together with the corroborating circumstances, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant drove the truck. Because the evidence was sufficient to establish that defendant drove the truck, we need not consider whether the State also proved that defendant was in actual physical control of the vehicle.

¶ 51                                 4. Evidence of Impairment

¶ 52 Defendant next argues that there was insufficient evidence to prove that he was driving under the influence of alcohol. He contends that the results of the field sobriety tests were

- 24 -

unreliable because they were not administered properly or conducted under proper conditions, and because Loyd lacked the qualifications to administer them. Defendant notes that, although Loyd testified he was trained in field sobriety testing, he did not specify when he received that training or whether it complied with NHTSA requirements. With respect to the HGN test, defendant argues that Loyd failed to first determine whether defendant had any head injuries and incorrectly testified that positive results indicated a likelihood that defendant was over the legal limit. Regarding the walk-and-turn test, defendant contends that Loyd provided improper instructions because he failed to instruct defendant to keep his lead foot on the line. Defendant further asserts that the one-leg stand test was unreliable because defendant's toes were frozen and he may have been suffering from hypothermia. Finally, defendant argues that the video evidence shows he exhibited no balance issues outside of the tests, spoke clearly, followed instructions, and demonstrated mental clarity.

¶ 53 A defendant is under the influence of alcohol when, as a result of consuming alcohol, his "mental or physical faculties are so impaired as to reduce [the] ability to think and act with ordinary care." *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57. A defendant must be impaired to the extent that he is incapable of driving safely. *Id.* Whether a defendant was under the influence is a question of fact. *Id.* ¶ 57. The State is not required to present scientific evidence, such as a breathalyzer test, to establish intoxication. *Id.* ¶ 58. Rather, intoxication may be proven through circumstantial evidence, and "[a]ny evidence of alcohol consumption is relevant to the issue of impairment." *Id.* The trier of fact may rely on credible testimony, including an officer's observations of a defendant's conduct, speech, or appearance. *Id.* Credible testimony that a defendant had glassy eyes, an odor of alcohol on his breath, or failed field sobriety tests is relevant evidence of impairment. *Id.* ¶ 58; *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20. Refusing to

submit to a breath test is also circumstantial evidence of consciousness of guilt. *Groebe*, 2019 IL App (1st) 180503, ¶ 59.

¶ 54 Viewed in the light most favorable to the State, the circumstantial evidence in this case supports the finding that defendant was under the influence of alcohol. Defendant admitted that he had been at a party and had consumed four drinks. During the video recording, near the time the HGN test was administered, defendant stated that he had more drinks than he should have at the party. Loyd, whose testimony the trial court found credible, testified that defendant smelled of alcohol, had slurred speech, and his clothing was disheveled. Loyd also testified that defendant had a flushed complexion and that his eyes were red, watery, and bloodshot, with dilated pupils. Defendant also exhibited clues of consumption during the field sobriety tests and refused to submit to a Breathalyzer or chemical testing. The video evidence, which the trial court was able to view, corroborated Loyd's testimony. This evidence supports the trial court's finding that defendant was under the influence of alcohol while driving. *Id.*; *People v. Janik*, 127 Ill. 2d 390, 402-03 (1989) (officer's testimony regarding odor of alcohol, watery eyes, and poor performance on field sobriety tests was sufficient evidence of intoxication).

¶ 55 Defendant argues that the trial court erred in relying on the field sobriety tests because Loyd failed to administer them under proper conditions and lacked the qualifications to do so. Defendant's argument is, in substance, a challenge to the foundation for Loyd's testimony regarding the field sobriety tests. This claim is forfeited. *People v. Johnson*, 238 Ill. 2d 478, 484 (2010) (failure to object at trial and include an issue in a posttrial motion results in forfeiture of ordinary appellate review). Although defendant challenged at trial the manner in which the walk-and-turn and the one-leg stand field sobriety tests were administered, he did not raise any foundational challenges to the admission of the field sobriety tests in his motion to reconsider.

While forfeiture does not apply to challenges to the sufficiency of the evidence (see, *e.g.*, *People v. Cregan*, 2014 IL 113600, ¶ 16), defendant's argument on appeal is not a pure sufficiency claim. Rather, he contends that his conviction rests on evidence that should have been excluded for lack of a proper foundation. Such a claim implicates admissibility issues that were not properly preserved for review nor exempt from the forfeiture principle. See *People v. Hamilton*, 361 Ill. App. 3d 836, 843-44 (2005) ("Generally, a defendant's challenge to the foundation for a particular piece of evidence is considered an attack on its admissibility rather than an attack on its sufficiency to uphold a conviction and is thus subject to the ordinary rules of [forfeiture]"); see also *People v. Hodges*, 2012 IL App (2d) 110723-U, ¶ 8. Further, although forfeited claims may be reviewed for plain error under Supreme Court Rule 615(a) (eff. Jan. 1, 1967), defendant does not request plain-error review on appeal. He has therefore forfeited plain error review as well. *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010) (a defendant who fails to argue for plain error review cannot meet his burden to prove either of the two prongs of plain error and has therefore forfeited plain error review).

¶ 56    Even if we were to overlook forfeiture, defendant's challenge to the testimony regarding the walk-and-turn and one-leg-stand tests lacks merit. Loyd testified that he had been a police officer for 25 years, was trained in standard field sobriety testing and the indicia of intoxication, had conducted approximately 200 DUI investigations, and had observed many people under the influence, specifically testifying that it was "too many to count." This testimony provided a sufficient foundation for his testimony regarding the walk-and-turn and one-leg stand tests. See *People v. Bostelman*, 325 Ill. App. 3d 22, 32 (2001) (officer's experience with DUI stops and arrests provided sufficient foundation for testimony regarding field sobriety tests other than the HGN test, because formal training was not required); see also *People v. Hires*, 396 Ill. App. 3d

315, 319 (2009) (quoting *People v. Sides*, 199 Ill. App. 3d 203, 206-07 (1990) (for field sobriety tests other than the HGN test, " '[n]o expert testimony is needed nor is a showing of scientific principles required' ")).

¶ 57    As to the weight and reliability of the walk-and-turn and one-leg stand tests, the trial court was aware of the asserted shortcomings.  Loyd acknowledged that he failed to instruct defendant to keep his lead foot on the line during the turn portion of the walk-and-turn test and testified that this omission affected the reliability of the test.  With respect to the one-leg stand test, Loyd acknowledged that feeling one's toes was important for balance, and there was evidence that defendant was cold and reported that his toes were frozen.  Nevertheless, the trial court viewed the video, which showed defendant performing the walk-and-turn test twice at the police station, where he was unable to maintain his balance during instructions, failed to walk heel-to-toe in a straight line, and used a wall for support.  The video further showed defendant hopping, putting his foot down, raising his arms for balance, and swaying during the one-leg stand test.  The trial court was thus able to consider the conditions under which the tests were administered, including that defendant was cold and was given time to warm up, and assess defendant's level of sobriety based on his test performance.  See *Bostelman*, 325 Ill. App. 3d at 33 (trial court may evaluate results of non-HGN field sobriety tests based on common experience); see also *People v. Day*, 2016 IL App (3d) 150852, ¶ 29 (improper administration of field sobriety tests affects weight, not admissibility).  Accordingly, there was no error in the trial court's consideration of the walk-and-turn and one-leg stand tests.

¶ 58    As to the HGN test, we recognize that it requires a more specific foundation than other field sobriety tests.  "[T]o be a reliable indicator of alcohol consumption, HGN field testing must be performed in accordance with the NHTSA protocol."  *People v. McKown*, 236 Ill. 2d 278, 298

(2010). HGN tests are admissible where a proper foundation has been laid, including a showing that the officer was properly trained and that the test was administered in accordance with proper procedures. *Id.* at 306. HGN testing is an indicator of alcohol consumption, not of a specific blood alcohol concentration or level of impairment. *Id.* at 302.

¶ 59    Here, at trial, Loyd testified that he was trained, both at the academy and the sheriff's office, in conducting standardized field sobriety tests. However, Loyd did not expressly testify at trial that he administered the HGN test in accordance with NHTSA standards. That specific testimony was elicited at the suppression hearing, where Loyd stated that he conducted the HGN test pursuant to NHTSA protocol, but that testimony was not repeated during the trial proceedings. Accordingly, defendant has at least a colorable argument that, based solely on Loyd's trial testimony, the State did not fully establish that the HGN test was administered in accordance with proper procedures. See *id.* at 306 ; see also *People v. Korzenewski*, 2012 IL App (4th) 101026, ¶ 21 (proper foundation where officer testified that he was both trained to administer and administered the HGN test in accordance with the NHTSA Manual).

¶ 60    Defendant's challenge to the HGN evidence also has merit to the extent he argues that Loyd improperly testified that the HGN test showed a likelihood of being over the legal limit. That characterization was improper. *McKown*, 236 Ill. 2d at 302; *People v. Motzko*, 2017 IL App (3d) 160154, ¶ 25 (HGN testimony suggesting a specific blood alcohol concentration reflects improper interpretation and inadequate training).

¶ 61    Nonetheless, any error in the admission or characterization of the HGN testimony was harmless beyond a reasonable doubt in light of the remaining evidence of impairment. See *People v. Borys*, 2013 IL App (1st) 111629, ¶¶ 40-41 (error in admission of officer's HGN testimony was harmless where other evidence alone was sufficient to prove defendant guilty of DUI beyond a

reasonable doubt); *People v. Graves*, 2012 IL App (4th) 110536, ¶ 33 (finding any error in the admission of the HGN test results was harmless where the competent evidence showed defendant had failed two additional field sobriety tests).  As noted above, there was ample other evidence of defendant's impairment, including his admission to drinking, the odor of alcohol, bloodshot and glassy eyes, flushed complexion, slurred speech, and his performance on the remaining field sobriety tests.

¶ 62   Defendant's arguments ultimately invite this court to reweigh the evidence and substitute our judgment for that of the trier of fact, which we may not do.  See *People v. Abdullah*, 220 Ill. App. 3d 687, 693 (1991).  It is the responsibility of the trier of fact to resolve conflicts in the evidence, assess credibility, and draw reasonable inferences therefrom.  *People v. Brown*, 2013 IL 114196, ¶ 48.  A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of defendant's guilt.  *Id.*  Here, viewing the evidence in the light most favorable to the State, we conclude that the State presented sufficient corroborating evidence of defendant's admission that he was the driver and sufficient evidence to sustain defendant's conviction for DUI.

¶ 63                                B. Motion to Suppress

¶ 64   Defendant's next contention on appeal is that the trial court erred in denying his motion to suppress.  Defendant asserts that his arrest was not supported by probable cause and that the trial court erred by not making a finding as to when defendant was under arrest and whether probable cause existed at that moment.  Defendant acknowledges that he did not raise this issue in his motion to reconsider, but argues that it is not forfeited because it is a constitutional issue that could be raised in a post-conviction petition.

¶ 65 To preserve an issue for review, it must be raised at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, constitutional issues that were properly raised at trial and may later be raised in a postconviction petition are exempt from forfeiture for failure to include them in a posttrial motion. *Cregan*, 2014 IL 113600, ¶ 16. Defendant's motion to suppress alleged a violation of his constitutional right to be free from unreasonable seizures. Accordingly, his claim falls within the constitutional exception to forfeiture and may be reviewed on appeal despite his failure to raise it in a posttrial motion. *Id.* ¶ 20. We therefore address the merits of defendant's challenge to the denial of his motion to suppress.

¶ 66 "When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion." *People v. Brooks*, 2017 IL 121413, ¶ 22. During a suppression hearing, a defendant must first make a *prima facie* showing that the evidence at issue was obtained through an illegal search or seizure. *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). If that showing is made, the burden shifts to the State to present evidence countering the defendant's *prima facie* case; however, the ultimate burden of proof remains with the defendant. *Id.* at 307.

¶ 67 We employ a two-part standard when reviewing a trial court's ruling on a motion to suppress evidence. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. "First, we defer to the trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence." *Id.* "A finding is against the manifest weight of the evidence when it is unreasonable." *Id.*; see *People v. Miller*, 2014 IL App (2d) 120873, ¶ 25 (noting that findings are against the manifest weight of the evidence if they are unreasonable, arbitrary, or not based on evidence or when an opposite conclusion is clearly evident). "Second, we review *de novo* the trial court's ultimate determination on whether the evidence should be suppressed." *Sims*, 2022 IL App (2d) 200391, ¶ 72; see *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006) (reviewing court "remains

free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted"). In conducting our review, we may consider both the evidence presented at the suppression hearing and the evidence introduced at trial. *People v. Caballero*, 102 Ill. 2d 23, 36 (1984).

¶ 68 The fourth amendment to the United States Constitution protects people against unreasonable searches and seizures. U.S. Const., amend. IV. "Not every police-citizen encounter results in a seizure." *People v. Smith*, 2016 IL App (3d) 140648, ¶ 28. As this court has observed:

> "[t]here are three tiers of police-citizen encounters: (1) an arrest of a citizen, which must be supported by probable cause; (2) a temporary investigatory seizure conducted pursuant to *Terry v. Ohio*, 392 U.S. 1 *** (1968), where an officer may conduct a brief, investigatory stop of a citizen when the officer has a reasonable, articulable suspicion of criminal activity and such suspicion amounts to more than a mere 'hunch'; and (3) police-citizen encounters that are consensual, which involve no coercion or detention and do not implicate any fourth amendment [(U.S. Const., amend. IV)] interests." *People v. Bianca*, 2017 IL App (2d) 160608, ¶ 13.

¶ 69 A traffic stop is considered more analogous to a temporary investigative seizure (*i.e.*, a *Terry* stop) than to a formal arrest. *People v. Maberry*, 2015 IL App (2d) 150341, ¶ 10. Traffic stops are subject to the fourth amendment's reasonableness requirement. *People v. Hackett*, 2012 IL 111781, ¶ 20. A police officer may conduct a brief investigatory stop where specific, articulable facts, together with rational inferences, reasonably warrant the intrusion; the officer's belief need not rise to the level of probable cause that a crime has been committed. *Id.* The test is objective and considers whether, under the totality of the circumstances, the facts available to the officer would warrant a person of reasonable caution in believing the stop was appropriate. *People v.*

*Timmsen*, 2016 IL 118181, ¶ 9. Although a defendant is not free to leave during a *Terry* stop, the stop is not an arrest. *People v. Thornton*, 2020 IL App (1st) 170753, ¶ 36.

¶ 70     Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. *People v. Wear*, 229 Ill. 2d 545, 563 (2008). Such a determination must be based on the totality of the circumstances at the time of the arrest. *People v. Day*, 2016 IL App (3d) 150852, ¶ 22. Probable cause must rise to a level higher than mere suspicion. *Id.* "Officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." (Internal quotation marks omitted.) *People v. Ciborowski*, 2016 IL App (1st) 143352, ¶ 78.

¶ 71     We first address defendant's contention that the trial court erred by failing to determine the precise point at which the investigatory stop ripened into an arrest and whether that arrest was supported by probable cause. The record does not support defendant's contention. The trial court found that defendant was placed under arrest at approximately 51 minutes into the detention, when Loyd informed defendant that he was under arrest. Although the trial court did not expressly determine whether probable cause existed at that moment, remand for such a determination is unnecessary. The material facts are essentially undisputed, as Loyd's testimony was uncontradicted and the entire encounter was recorded. Accordingly, whether those facts established probable cause presents a legal question that we review *de novo*. See *People v. Tolliver*, 2022 IL App (2d) 210080, ¶ 23. Under *de novo* review, this court performs the same analysis as the trial court and owes no deference to the trial court's ultimate legal conclusions. *People v. Harris*, 2022 IL App (1st) 192509, ¶ 19. Thus, because the material facts are undisputed, we may

resolve the ultimate legal questions presented and proceed to address the propriety of the denial of defendant's motion to suppress.

¶ 72    The trial court did not err in denying defendant's motion to suppress because neither his initial detention nor his subsequent arrest was unlawful. The initial encounter between defendant and Officer Loyd was consensual. *People v. Gherna*, 203 Ill. 2d 165, 178 (2003) ("a seizure does not occur simply because a law enforcement officer approaches an individual and puts questions to that person if he or she is willing to listen"); *People v. Starnes*, 374 Ill. App. 3d 329, 334 (2007) ("mere police questioning is not a seizure"). Loyd was responding to a report of a car in a ditch. When he arrived, he approached defendant to ask him what had happened. Loyd testified that, during this interaction, he smelled an odor of alcohol on defendant's breath, his speech was slurred, he had a flushed complexion, and his eyes were red, watery, bloodshot, and dilated. Further, defendant admitted that he had been at an office Christmas party and had consumed four alcoholic beverages.

¶ 73    Based on Loyd's observations, and defendant's admission to drinking, Loyd believed defendant was under some level of influence and asked him to perform some field sobriety tests. The issue thus becomes whether this request turned the consensual encounter into a seizure. In *People v. Walter*, 374 Ill. App. 3d 763 (2007), this court acknowledged that there was ample foreign authority to support a holding that submission to field sobriety testing constituted a seizure under the fourth amendment (*id.* at 767-771 (citing cases)), but declined to adopt a *per se* rule because the determination depended on the circumstances surrounding the request and the nature of the request itself (*id.* at 772). The court explained that it need not address the issue because, even assuming the request to perform field sobriety tests was a seizure in that case, the testing was justified under the fourth amendment. *Id.* at 773.

¶ 74    As in *Walter*, we need not decide whether defendant was seized when he submitted to field sobriety testing because, even assuming a seizure occurred at that point, the seizure did not run afoul of the fourth amendment. The administration of field sobriety testing "requires only reasonable suspicion unless the circumstances otherwise show that an arrest took place." *Id.* Factors relevant to determining whether a defendant has been arrested for DUI are: " '(1) the issuance of a citation; (2) the administration of field sobriety tests; (3) the transportation to a police station [citation]; (4) the police officer's continuing possession of an individual's driver's license; (5) the handcuffing of the individual or the placing of the individual in the squad car [citation]; and (6) the duration of the individual's detention [citation].' " *Id.* (quoting *People v. Fortney*, 297 Ill. App. 3d 79, 86 (1998)).

¶ 75    Based on the foregoing factors, defendant was not under arrest when Loyd asked him to perform field sobriety tests. Other than retaining defendant's driver's license and requesting that he perform field sobriety tests, defendant had not been issued a citation, handcuffed, placed in a squad car, or transported to a police station. Under these circumstances, defendant was not under arrest at the time he submitted to field sobriety testing. *Village of Lincolnshire v. Kelly*, 389 Ill. App. 3d 881, 886 (2009) (the defendant was not under arrest where, aside from the officer administering field sobriety tests and possessing her driver's license, no citation had been issued, she was not handcuffed or placed in a squad car, and she did not argue she was under arrest at the time she submitted to the testing); *Walter*, 374 Ill. App. 3d at 773. Accordingly, we need only determine whether the field sobriety testing was supported by reasonable suspicion. *Walter*, 374 Ill. App. 3d at 773.

¶ 76    Here, the field sobriety testing was supported by reasonable suspicion. Loyd testified that, before administering the tests, he smelled an odor of alcohol on defendant's breath, defendant's

speech was slurred, he had a flushed complexion, and his eyes were red, watery, bloodshot, and dilated. Defendant also admitted that he had been drinking. Defendant was alone in a rural area near a truck that had left the roadway and become stuck in a snowbank, and when asked where he was going, he described where he was attempting to drive. He never stated that he was not the driver of the truck or that anyone else was in the car with him. Under these circumstances, Loyd had a reasonable suspicion, grounded in specific and articulable facts, that defendant was driving under the influence when he requested field sobriety testing. *Kelly*, 389 Ill. App. 3d at 886-887; *Walter*, 374 Ill. App. 3d at 774-75 (field sobriety tests supported by reasonable suspicion where the defendant's eyes were bloodshot, he had a strong odor of alcohol on his breath, he admitted drinking four glasses of beer, and, while he did not specifically admit he had been the driver, it was reasonable to suspect that he was). Therefore, even if the testing constituted a seizure, it was permissible under *Terry*. *Kelly*, 389 Ill. App. 3d at 887.

¶ 77 Further, the *Terry* stop did not transform into an arrest when defendant was allowed to warm up in the squad car or transported to the Kingston police station. Both times defendant entered the squad car, defendant entered voluntarily and Loyd specifically told defendant he was not under arrest. Loyd offered to transport defendant to a local police station so that he could do the remaining field sobriety tests in a warm environment. Defendant was initially hesitant but ultimately stated that he could not do the tests outdoors and voluntarily walked to Loyd's squad car. Transporting defendant to another location, including a police department, during an investigatory stop does not necessarily turn the seizure into an arrest. See, *e.g.*, *Florida v. Royer*, 460 U.S. 491, 504 (1983) ("[T]here are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention."); *People v. Alvizures*, 2024 IL App (1st) 221634-U, ¶ 35 (due to snowy conditions and defendant's advanced

years, transporting defendant to police station to complete field sobriety tests did not transform the investigatory stop into an arrest); *People v. Ollie*, 333 Ill. App. 3d 971, 981-82 (2002) (defendant was not under arrest when officers transported him to a police station to continue an investigation where defendant went voluntarily, officers did not use force, and defendant was not handcuffed); *People v. Vena*, 122 Ill. App. 3d 154, 163 (1984) (given the blizzard conditions, transporting the defendants to the police station to continue the investigation was no more intrusive than keeping them outside or in a squad car as there was no indication the officers did so to conduct interrogation or engage in any actions beyond completing the investigation).

¶ 78    We also conclude that the duration of the detention did not transform the investigatory stop into an arrest.  The trial court expressly found that the majority of the detention resulted from accommodations made to allow defendant to warm up and complete the field sobriety tests under conditions that would not adversely affect his performance.  It was approximately 14 minutes from the time Loyd requested field sobriety tests until the time defendant agreed to be transported to the Kingston police station.  During that period, defendant was allowed to warm up in the squad car, the HGN test was administered, and the walk-and-turn test was explained and demonstrated.  Upon arriving at the police station, Loyd immediately resumed the testing process.  After defendant completed the walk-and-turn test twice, defendant was allowed additional time to warm his feet before completing the remaining tests.  After defendant refused the portable breath test, Loyd placed him under arrest.  Thus, the detention lasted only as long as reasonably necessary to safely and accurately complete the investigation.  See *United States v. Sharpe*, 470 U.S. 675, 686 (1985) (the relevant inquiry is whether police diligently pursued a means of investigation likely to confirm or dispel their suspicions); *People v. O'Dell*, 392 Ill. App. 3d 979, 987 (2009) (90-minute detention did not exceed the permissible scope of an investigatory stop where the duration was attributable

to legitimate investigative needs). Under the circumstances presented here, the detention remained sufficiently limited in scope and duration to qualify as a *Terry* stop.

¶ 79    Finally, we conclude that probable cause existed when defendant was formally arrested. At that point, Loyd had observed that defendant had bloodshot eyes, slurred speech, an odor of alcohol on his breath, and a flushed complexion. Defendant admitted that he had been drinking. Defendant was the only person present near a truck that had left the roadway and become stuck in a snowbank. Although Loyd did not witness the truck leave the roadway, such observation was not required. See *People v. Wingren*, 167 Ill. App. 3d 313, 321 (1988). Defendant described where he had been attempting to drive, had personal belongings in the truck, never suggested that someone else had been operating it, and failed field sobriety tests. Considering the totality of the circumstances, Loyd had probable cause to believe that defendant had driven the truck while under the influence of alcohol. *Fortney*, 297 Ill. App. 3d at 87-88 (bloodshot eyes, strong odor of alcohol, and failed field sobriety test established probable cause for arrest); *People v. Crocker*, 267 Ill. App. 3d 343, 346 (1994) (slurred speech, odor of alcohol, and two failed field sobriety test created probable cause for arrest). Accordingly, defendant's fourth amendment rights were not violated and the trial court did not err in denying defendant's motion to suppress.

¶ 80    In arguing that there was no probable cause, defendant cites several cases for the proposition that an odor of alcohol, admission to drinking, and bloodshot and glassy eyes do not, standing alone, establish probable cause for DUI without evidence of other factors to support impairment, such as poor driving, stumbling, falling, or an inability to communicate. For various reasons, the cases cited are distinguishable.

¶ 81    Defendant first relies on *Day*, 2016 IL App (3d) 150852, and *People v. Motzko*, 2017 IL App (3d) 160154. In *Day*, the defendant committed no driving violations, communicated clearly

- 38 -

with the officer, and performed reasonably well on field sobriety tests. *Day*, 2016 IL App (3d) 150852, ¶¶ 18, 37. In affirming the trial court's order granting the defendant's motion to suppress, the reviewing court emphasized that the defendant's driving was "nothing short of perfect" and that the field sobriety tests revealed no indication of impairment. *Id.* ¶ 37. In *Motzko*, the evidence showed only a slight odor of alcohol and an admission to consuming one drink, and the trial court found the officer not credible on the issue of impairment. *Motzko*, 2017 IL App (3d) 160154, ¶¶ 22, 26.

¶ 82    Here, in contrast, defendant was involved in a single-vehicle accident, emitted a strong odor of alcohol, admitted consuming four drinks, exhibited slurred speech, and appeared disheveled. The trial court also found that defendant's performance on the field sobriety tests demonstrated balance problems that "were not small ones" and expressly found Loyd's testimony credible. Accordingly, *Day* and *Motzko* are materially different from the present case.

¶ 83    Defendant also relies on *People v. Boomer*, 325 Ill. App. 3d 206 (2001), and *People v. Tucker*, 245 Ill. App. 3d 161 (1993). In *Boomer*, although the defendant had been involved in an accident, emitted a strong odor of alcohol, and admitted drinking, this court affirmed the trial court's finding that probable cause to arrest for DUI was lacking. *Boomer*, 325 Ill. App. 3d at 211. After hearing the arresting officer's testimony, the trial court found that the circumstances did not indicate alcohol-related impairment and we deferred to that determination. *Id.* at 211. In *Tucker*, this court likewise affirmed the trial court's finding of no probable cause where the arresting officer's written report noted an odor of alcohol and poor performance on an unspecified field sobriety test, but the trial court apparently credited the defendant's testimony explaining his driving. *Tucker*, 245 Ill. App. 3d at 165-66. We again deferred to the trial court's credibility determination. *Id.* at 166.

¶ 84    Neither *Boomer* nor *Tucker* supports defendant's position.  Both cases turned in significant part on deference to trial-court findings that favored the defendants.  Here, by contrast, the trial court expressly found Loyd credible and found multiple indicators of impairment beyond the odor of alcohol and defendant's admission to drinking, including slurred speech, disorientation to time and place, a disheveled appearance, poor performance on the non-HGN field sobriety tests, and defendant's involvement in a single-vehicle accident on roads that appeared clear and dry.  Considering the totality of the circumstances, defendant's cited cases do not undermine a determination that probable cause existed.

¶ 85                                C. Improper Lane Usage

¶ 86    Defendant's final contention on appeal is that he was not proved guilty beyond a reasonable doubt of improper lane usage.  He notes that not every lane departure is a violation and the State failed to show that he did not travel out of his lane due to road conditions or to avoid a collision.  As this argument challenges the sufficiency of the evidence, we will review it under the *Collins* standard set forth above.  *Collins*, 106 Ill. 2d at 261.

¶ 87    Section 11-709(a) of the Illinois Vehicle Code (Code) requires that a vehicle "be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."  625 ILCS 5/11-709(a) (West 2022).  The language "as nearly as practicable" indicates that section 11-709(a) is not a strict liability provision.  *People v. Hackett*, 2012 IL 111781, ¶ 27.  As such, the State must show that a driver departed from his lane when it was feasible to remain within it.  *Id.*  Accordingly, "[t]his language makes clear that applying the statute requires a case-by-case assessment of the surrounding circumstances, including whether conditions such as weather, road hazards, or other obstacles justified the lane deviation."  *Id.*

¶ 88    In the present case, the evidence was sufficient to prove defendant guilty of improper lane usage beyond a reasonable doubt.  As noted above, there was sufficient corroborating evidence to prove that defendant was driving the truck.  Further, the trial court could reasonably conclude that it was practicable for defendant to remain within his lane and that his departure from the roadway was not caused by weather conditions or another external hazard.  Loyd testified that the roads were clear and that only the shoulders and sides of the road were covered in snow and ice.  He further testified that he had no trouble driving his squad car to the scene.  The trial court found Loyd's testimony credible and also observed that the video showed the roadways to be clear and dry.  Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that defendant moved outside his lane and drove his truck into the snowbank on the side of the road.  *Slinkard*, 362 Ill. App. 3d at 857 (a criminal conviction may be based on circumstantial evidence as long as "all the evidence considered collectively satisfies the trier of fact beyond a reasonable doubt that the defendant is guilty").  Although defendant argues that he may have left the roadway because of weather conditions or to avoid a collision, the trier of fact was not required to accept those speculative explanations or draw inferences most favorable to defendant.  See *People v. Martin*, 401 Ill. App. 3d 315, 323 (2010).

¶ 89                                          III. CONCLUSION

¶ 90    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 91    Affirmed.